George **MORALES** et al.
v.
Steven A. **MINTER** et al.

Theresa **RYAN** et al.
v.
Steven A. **MINTER** et al.

Civ. A. Nos. 74–1404–F and 74–4898–F.

United States District Court,
D. Massachusetts.

April 22, 1975.

William A. Breitbart, Western Mass. Legal Services, Springfield, Mass., for plaintiffs in 74–1404–F.

Richard T. Egan, Joseph A. Pelligreno, Asst. Attys. Gen., Springfield, Mass., for defendants in 74–1404–F.

Lisa Fitzgerald, Richard A. Gross, Patrick King, Boston Legal Assistance Project, Boston, Mass., for plaintiffs in 74–4898–F.

Danielle deBenedictis, Asst. Atty. Gen., Boston, Mass., for defendants in 74-4898-F.

Before McENTEE, Circuit Judge, and SKINNER and FREEDMAN, District Judges.

OPINION

FREEDMAN, District Judge.

This three-judge court was convened, pursuant to 28 U.S.C. §§ 2281 and 2284, to determine the constitutionality of a state welfare statute, M.G.L. c. 117, § 4.[1] Before us are two factually unrelated class actions (Ryan v. Minter and Morales v. Minter) which have been consolidated because plaintiffs in both actions seek declaratory and injunctive relief from the enforcement, by officials responsible for the actions of the Massachusetts Department of Public Welfare ["the Department"], of the statute in question, insofar as it (and the Department's regulations[2] promulgated pursuant to it) limits the respective plaintiffs' eligibility for benefits under the Massachusetts program of public assistance known as General Relief ["GR"]. Since plaintiffs in each case claim that the operation and enforcement of M.G.L. c. 117, § 4, and its companion regulations by the defendants, violates their due process and equal protection rights

under the Fourteenth Amendment to the Constitution, jurisdiction is proper under 28 U.S.C. § 1343(3) and (4), the jurisdictional counterpart to 42 U.S.C. § 1983. Oral argument pertaining to all constitutional issues was heard on December 19, 1974.

The original defendants in both actions were Mr. Steven A. Minter, Commissioner of the Massachusetts Department of Public Welfare, and Mr. Peter Goldmark, Secretary of the Executive Office of Human Services. They have subsequently been replaced in office by Mr. Jerald Stephens and Ms. Lucy Benson, respectively, who are now defendants herein. Fed.R.Civ.P. 25(d)(1).

Defendant Stephens, pursuant to M.G.L. c. 118A, § 1, is charged with the administration of a program of financial assistance for aged and disabled persons who reside within the Commonwealth. Defendant Benson has executive responsibility, pursuant to M.G.L. c. 6A, § 16, for the policies and practices of the Department of Public Welfare.

■ In Morales v. Minter, the Department itself is claimed to be a defendant. Yet this Court, in a § 1983 action, has no jurisdiction over the political subdivisions of the states. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v.

---

1. M.G.L. c. 117, § 4:
The benefits of this chapter shall be available to any applicant who resides in the commonwealth and who is between the ages of eighteen and sixty-five years, . . . provided, however, that students shall not be so eligible either as an applicant or as the dependent of an applicant.

2. M.P.A.P.M., c. I, § D, p. 1:
ELIGIBILITY REQUIREMENTS FOR GENERAL RELIEF

. . . . .
The following are the eligibility requirements for financial assistance and medical care under the General Relief program.
1. *Age*
An applicant must be at least eighteen (18) years of age and not have reached his sixty-fifty (65) birthday.

12. *Eligibility for Federally Aided Programs*
Persons eligible for AFDC or SSI (Supplemental Security Income) are not eligible for GR. All persons under age 65, with indications of physical or mental disability, who apply for GR, must also apply for SSI within two (2) weeks of GR application. Failure to do so will result in denial of the GR application. Once application for SSI is made and verified, the applicant may be aided by GR while a decision on SSI eligibility is pending. Immediately upon approval of payment by SSI, the GR case is to be closed.

. . . . .

Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961).

The facts in each case are not disputed. In Ryan v. Minter, each plaintiff applied to the Social Security Administration for Supplemental Security Income (SSI) benefits. Although each presumably was eligible for SSI, none received immediate payments because there is customarily a two or three month waiting period[3] from the date of application until the date applicants actually begin to receive their SSI checks.

Since the plaintiffs had no source of income other than public assistance, they applied to the Department for emergency benefits under GR to hold them over pending their receipt of SSI benefits. Yet their applications were denied, pursuant to M.G.L. c. 117, § 4 and M.P.A.P.M., c. I, § D, p. 1, ¶ 1, and p. 4, ¶ 12, because each was 65 years of age or older. It is undisputed that each plaintiff would be eligible for GR but for the age restriction imposed by the statute and its accompanying regulations.[4,5]

3. The SSI program does allow one advance emergency payment to be made to the "presumptively eligible" applicant in an amount not to exceed one hundred ($100) dollars. 42 U.S.C. § 1383(4)(A).

4. Plaintiffs in the *Ryan* case, C.A. No. 74–4898–F, have moved this Court to enter an order, pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, certifying that the action is properly maintainable as a class action. The Court orders that plaintiffs Ryan, Osterhaut and Rodriguez may sue as representative parties on behalf of all persons residing in the Commonwealth of Massachusetts who:

(a) are 65 years of age or older;
(b) have applied, or will apply, for assistance under the SSI program;
(c) experience, or will experience, delay from the date of application to the Social Security Administration until the date of a determination of eligibility and/or actual receipt of the first SSI payment; and
(d) would be eligible for GR but for the age restriction imposed by M.G.L. c. 117, § 4, and M.P.A.P.M., c. I, § D, p. 1, ¶ 1, and p. 4, ¶ 12.

The Court finds that the class is so numerous that joinder of all members is impracticable, that there are questions of law or fact common to the members of the class, that the claims of the representative parties are typical of the claims of the class they represent, and that the representative parties will fairly and adequately protect the interests of the class. In addition, the Court finds that the parties opposing the class have acted on grounds generally applicable to the class. That is, they have enforced the challenged statute and accompanying regulations in such a manner as to deny plaintiffs, and the class which they represent, benefits under the GR program. Therefore, we find the class action to be maintainable under Fed. R.Civ.P. 23(b)(2).

5. The Court is constrained to address the question of mootness since it is clear at this late date that the two to three month waiting period has expired for named plaintiffs. Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), holds that while a controversy may no longer be live as to a named plaintiff, there may still be a controversy between a named defendant and a member of the class represented by the named plaintiff. Such is the situation here where members of the represented class are still subject to the waiting period.

The Court, in *Sosna*, however, went on to say that it remains necessary for a case or controversy to exist between the named plaintiff and defendant ". . . at the time the class action is certified by the District Court pursuant to Rule 23 . . . ." *Id.* at 402, 95 S.Ct. at 559. While this requirement would seem to moot the present case, the *Sosna* Court recognized an exception in certain cases in which the "certification can be said to 'relate back' to the filing of the complaint . . . depend[ing] upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 402, n.11, 95 S.Ct. at 559. *See*, Gerstein v. Pugh, 420 U.S. 103, 110 & n.11, 95 S. Ct. 854, 861, 43 L.Ed.2d 54 (1975).

This case seems to be an appropriate one for the application of the "relat[ion] back" doctrine. Full judicial review by this Court would have been impractical in the relatively short period (two to three months) during which the controversy remained live for any individually named plaintiff. In other words, if this doctrine is not applied here, ". . . state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain [injured] for the period necessary to see . . . [the] lawsuit to its conclusion." *Id.* 419 U.S. at 400, 95 S. Ct. at 558. Finally, and most importantly,

The General Relief Program was established in Massachusetts to ". . . assist, to the extent practicable, all poor and indigent persons residing therein, whenever they stand in need of such assistance. . . ." M.G.L. c. 117, § 1. The program is funded solely by the Commonwealth as opposed to other public assistance programs which are fully or partially funded by the federal government. Therefore, so as to conserve state funds, the Department gives GR benefits only to those indigents who are not eligible for federally or partially federally funded assistance programs. *See*, M.P.A.P.M. c. I, § D, p. 4, ¶ 12, and c. XI, § C, part 7, p. 1, ¶ 1. Such partially federally funded benefits were available, prior to January 1, 1974, to members of plaintiffs' class under a number of separate grant-in-aid programs [6] within the Social Security Act. Consequently, M.G.L. c. 117, § 4, was formulated to deny GR benefits to these applicants.

The statute caused little or no controversy before January 1, 1974 because applicants received their Social Security checks shortly after they applied for benefits. Each state administering a grant-in-aid program was required to give ". . . assistance . . . with reasonable promptness to all eligible individuals." 42 U.S.C. §§ 302(a)(8), 1202(a)(11), and 1352 (a)(10). "Reasonable promptness" was defined in the Handbook of Public Assistance Administration to mean not more than thirty (30) days from the date of application. Hence, if indigent applicants could hold out for a month or less, they had no reason to seek emergency funding from the Commonwealth or elsewhere.

That state of placidity terminated on January 1, 1974, the effective date of a new Title XVI of the Social Security Act, entitled "Supplemental Security Income For Aged, Blind, and Disabled" (S.S.I.), 42 U.S.C. § 1381 et seq., which repealed and replaced the former grant-in-aid programs to the states in support of their adult welfare programs under the Social Security Act. In essence, the new SSI program "federalized" and consolidated the previous programs of aid to the indigent aged, blind and disabled.

The new SSI provisions establish a federal "floor" of annual assistance for each aged, blind, or disabled person. 42 U.S.C. § 1382(b)(1) and (2). In order to avoid causing a reduction of aid to persons in states like Massachusetts which had a pre-1974 level of assistance higher than the SSI "floor" amount, the statute allows for state supplementation of the uniform federal grant ("the floor"). 42 U.S.C. § 1382e. The state may pay this supplement directly to the recipient or, as in the case of Massachusetts, may contract with the Social Security Administration so that the federal agency makes all eligibility determinations and provides the supplementation as a part of the boosted monthly SSI grant. In turn, the agency subsequently receives reimbursement from the Commonwealth for the additional monies expended. *Id.*

Unlike the former grant-in-aid programs, the SSI provisions establish no duty on the part of the Social Security Administration to make eligibility determinations and payments within a specified period of time.[7] *See*, 42 U.S.C. § 1383(a)(1). As stated above, the indigent aged residing in Massachusetts must now wait two or three months before their SSI payments begin to arrive. Yet the Congress, apparently acting in recognition of the financial burden imposed upon SSI applicants by this pro-

---

these litigants should not be penalized for the Court's having deferred class certification until the conclusion of the case.

Consequently, the certification of this class will be said to "relate back" to the filing of the action and therefore, all the requisites of a true case or controversy are satisfied.

6. These programs included Old Age Assistance, 42 U.S.C. § 301 et seq., Aid to the Blind, 42 U.S.C. § 1201 et seq., and Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1351 et seq.

7. But *see*, n.3, *supra*.

longed waiting period, amended the new Title XVI to provide in part:

> . . . the Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof . . .) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision). 42 U.S.C. § 1383(g)(1).

Thus, if Massachusetts were to furnish "interim assistance payments" under GR to aged SSI applicants awaiting their initial SSI payment, the amendment provides a vehicle whereby the state would be fully reimbursed by the federal government. Nevertheless, the state has chosen not to avail itself of this opportunity.

Despite this, the Department does, in fact, extend GR benefits during the waiting period to persons eligible for SSI who are disabled but who are *under* age sixty-five. M.G.L. c. 117, § 1, and M.P.A.P.M., c. I, § D, p. 4, ¶ 12 (revised 12/74). Determinations of eligibility for such interim benefits must be made, as all eligibility determinations under GR must be made, within two weeks from the date of application. M.G.L. c. 117, § 5. ". . . [T]he department may render assistance in the form of food orders and shelter . . . pending its determination . . ." *Id.* Nevertheless, GR is denied to those awaiting their first SSI payment if they are over the age of 65. M.G.L. c. 117, § 4, and M.P.A.P.M., c. I, § D, p. 1, ¶ 1, and p. 4, ¶ 12.

The second case before us, Morales v. Minter, pertains to the other extreme of the statute's spectrum of eligibility, to wit, the denial of GR benefits to any person below the age of 18. M.G.L. c. 117, § 4. It is brought by the named plaintiffs as a class action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of all other persons similarly situated. Allegedly, the class so represented consists of all poor and indigent persons residing within the Commonwealth who: (1) are emancipated, (2) are under the age of 18, (3) meet all of the financial eligibility requirements for GR, (4) are ineligible for any other public assistance programs available within the Commonwealth, and (5) would be eligible for GR but for the application of M.G.L. c. 117, § 4, and M. P.A.P.M., c. I, § D, p. 1, ¶ 1. Because we find difficulties in allowing some of the named plaintiffs to sue as representatives of the defined class, we must examine these plaintiffs' claims of representativeness in greater depth than was necessary with the *Ryan* plaintiffs.

Three plaintiffs in this action are married. All were under the age of 18, yet over the age of 16, on April 19, 1974, the filing date of the complaint.

Plaintiffs George and Maribel Morales applied to the Department for public assistance on or about February 21, 1974. They were then living with George Morales' mother, a recipient of AFDC. In fact, George Morales was on his mother's AFDC budget until May 16, 1974. Neither spouse was then attending school and both were unemployed.

On or about March 1, 1974, Mr. and Mrs. Morales were notified in writing that their application for GR was denied since both applicants were under 18. They reapplied in March and in April of 1974, and again were orally informed that they were ineligible for GR.

Since Maribel Morales was pregnant with the couple's first child, she was deemed eligible, on May 10, 1974, to receive AFDC benefits for herself and her unborn child. Prior to that date, they had been informed that she was ineligible for AFDC despite her pregnancy and that he did not qualify as an AFDC unemployed father because he had not amassed the number of work quarters required by 42 U.S.C. § 607 and the regulations established pursuant to it.

Plaintiff Daniel Parzyck will not be 18 years of age until April 23, 1975. He is married to Arlene Clark Parzyck. On April 11, 1974, plaintiff Parzyck and his wife, who was then pregnant, applied to the Department for public assistance. On May 10, 1974, the Parzycks were denied AFDC benefits because Mr. Parzyck, like Mr. Morales, had not amassed sufficient work quarters to qualify as an AFDC unemployed father. They were further informed that they were ineligible for GR because they were under 18 years of age.

Since the date of their marriage, Daniel Parzyck and his wife have resided in the home of his parents who begrudgingly provide them room and board. The Parzycks, at the time of their application, were unemployed and had no independent sources of income.

Before the Court are motions to add three females as party-plaintiffs. We allow the motions. All three are unmarried, not attending school, and residing apart from their parents.[8] From the filing date of their motions to the present, each has been over the age of 16, yet under the age of 18. Two are unemployed and the other earns approximately forty ($40.00) dollars per week at a part-time job. None receives support from her parents. Finally, each has applied to the Department for public assistance but has been refused solely because she was under 18 years of age.

Before we get to the issue of whether these plaintiffs can properly sue on behalf of a class, a summary of the state and federal welfare programs applicable to some members of plaintiffs' age group is in order.

Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601 et seq., is a state and federally funded assistance program which furnishes financial and other assistance to families with

". . . needy child[ren] (1) who [have] been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who [are] living with . . . [specifically defined relatives] . . ., in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who [are] (A) under the age of eighteen, or (B) under the age of twenty-one and . . . a student . . .." 42 U.S.C. § 606(a).

Although there are some "families" receiving AFDC which consist of the needy child and a caretaker relative, the customary AFDC family unit consists of the dependent child living with one of his parents. Nevertheless, there is a separate component of AFDC, commonly known as AFDC–U, which allows an intact family to receive benefits if the father is unemployed. 42 U.S.C. § 607. To be "unemployed" under the statute, the father must, in part, "not [have] been employed . . . for at least 30 days prior to the receipt of [AFDC–U benefits], . . . not [have] . . . refused a bona fide offer of employment, and [have] . . . 6 or more quarters of work . . . in any 13-calendar-quarter period ending within one year prior to the application for [AFDC–U] . . .." 42 U.S.C. § 607(b)(1)(A), (B), and (C)(i).

In addition to AFDC, the Commonwealth has established, within the Department of Public Welfare, a system of foster care for individuals under the age of 18. M.G.L. c. 119, § 23. When a minor is accepted for foster care, the Department assumes the financial responsibility of providing for that person. *Id.* In certain instances, it may also be necessary for the Department to assume "custody" of the child which is defined to include the power: (1) to determine

---

8. One of the three, Rosa Maria Rodriguez, resides in Springfield's North End Drug Abuse Residential Center which is funded by state and federal funds. It is unknown whether she receives funds from the Center but others residing there, who are over 18 and have the required financial need, are eligible for GR pursuant to M.P.A.P.M., c. IV, part 3, p. 10.

the child's place of abode, medical care and education; (2) to control visits to the child; and (3) to consent to enlistments, marriages and contracts otherwise requiring parental consent. M.G.L. c. 119, § 21. *See,* M.G.L. c. 119, § 23, subd. C.

Admission of those under 18, yet over 16, to the foster care program is discretionary and depends upon a finding by the Department that the child is in need of foster care.[9] Nevertheless, admission is mandatory if ordered by the probate court. M.G.L. c. 119, § 23, subd. C.[10]

■ Turning now to the certification issue, we have decided that it is more appropriate in this case (Morales v. Minter) to certify two classes rather than one. Fed.R.Civ.P., 23(c)(4)(B). The first class shall be the same as defined, see p. 93, *supra,* except that it shall contain no person under the age of 16. The second class shall be comprised of all poor and indigent persons residing in the Commonwealth who: (1) are under the age of 18, yet over the age of 16; (2) are not residing with their parents or legal guardians; (3) meet all of the financial eligibility requirements for GR; (4) may be eligible for other public assistance programs available within the Commonwealth; and (5) would be eligible for GR but for (a) the application of the age restriction in M.G.L. c. 117, § 4, and M.P.A.P.M., c. I, § D, p. 1, ¶ 1, and/or (b) the application of M.P.A.P.M., c. XI, § C, part 7, p. 1, ¶ 1, which excludes individuals from receiving GR if they are receiving another form of assistance.

■ We find that the three females, Andino, Rodriguez and Hall, who have been added as plaintiffs herein, are single minors whose parents are either unable, unavailable or unfit to care for them. This clearly makes them eligible for foster care under M.G.L. c. 119, §§ 23, subd. A and 23, subd. C. As such, they are not representative of those in the first class who "are ineligible for any other public assistance programs available within the Commonwealth." Yet they are representative of all those in class two, and therefore, the Court orders that plaintiffs Andino, Rodriguez and Hall, may sue as representatives of that class.

■ We have also determined that Daniel Parzyck is capable of representing those in class one. He is, unlike plaintiffs Hall, Andino and Rodriguez, clearly "ineligible for any other public assistance program available within the Commonwealth." The distinguishing characteristic between him and the three single females is the fact of his marriage which served to emancipate him from parental control and support. Commonwealth v. Graham, 157 Mass. 73, 75–76, 31 N.E. 706 (1892). It also served to disqualify him from eligibility for foster care because such care, which is essentially *in loco parentis,* would be inconsistent with his recent emancipation from parental control. Mr. Parzyck further qualifies as representative of those in class one because he is: (a) not eligible for AFDC, 42 U.S.C. § 606(a), or AFDC–U, 42 U.S.C. § 607(a); (b) indigent, and therefore eligible for GR but for the program's age restriction; and (c) under 18 but over 16 years of age.

Although Mr. and Mrs. Morales are, like Mr. Parzyck, emancipated from parental control and also ineligible for foster care, we do not reach the question of their ability to sue in a representative capacity. Mrs. Morales began receiving AFDC benefits shortly after the filing

9. M.G.L. c. 119, § 23, subd. A provides:
 Upon the application of a parent or guardian or any person acting in behalf of the child, or the child himself, the department may accept for foster care any child under eighteen years who in its judgment is in need of foster care.

10. We specifically do not discuss those subsections of Section 23 pertaining to children under sixteen years of age. This group is not represented here.

of the complaint in this case. Thus, her action against the defendants may be moot.[11] Mr. Morales was on his mother's AFDC budget when this action was filed and when he applied for GR. But no person is eligible for GR if he is receiving benefits under AFDC. M.P.A. P.M., c. I, § D, p. 4, ¶ 12, and c. XI, § C, part 7, p. 1, ¶ 1. Thus, Mr. Morales would seem to be both financially and chronologically ineligible for GR. Given this fact, there is some question whether he has the standing to sue the defendants on the theory that the age criterion for GR eligibility is unconstitutional.

With respect to both the first and second classes, we find that the prerequisites to a class action, as stated in Fed. R.Civ.P. 23(a)(1), (2), (3) and (4), are satisfied. In addition, we find that the parties opposing both classes have acted on grounds generally applicable to both. That is, they have enforced the challenged statute and accompanying regulations in such a manner as to deny plaintiffs, and the classes they represent, benefits under the GR program. Therefore, we find the class action, containing two separate classes, to be maintainable under Fed.R.Civ.P. 23(b)(2).[12]

Some action has previously been taken in these cases. In *Ryan*, this judge issued a temporary restraining order on October 23, 1974. One week later, the order was amended and has remained in effect, as amended, to date. The gist of the order restrains defendants in *Ryan* from refusing GR benefits to those in plaintiffs' class who are awaiting their initial SSI payment. In contrast, a temporary restraining order was denied to plaintiffs in *Morales*.

The issue in both cases before us is whether the operation and enforcement of M.G.L. c. 117, § 4, serves to violate the respective plaintiffs' due process and equal protection rights guaranteed by the Fourteenth Amendment to the Constitution. We find that it does with respect to some.

The GR program's express legislative purpose is to "assist, to the extent practicable, *all* poor and indigent persons residing [in Massachusetts], whenever they stand in need of such assistance." M.G.L. c. 117, § 1. [Emphasis added.] Nevertheless, the statute attacked herein absolutely bars from receipt of GR all applicants not between the ages of 18 and 65. In effect, it establishes a conclusive and irrebutable presumption that these persons are not in need of financial assistance from the Commonwealth. That is, once it is ascertained that an applicant is not within the eligible age group, he is not given an opportunity to prove his indigency or, in the case of an individual under 18, his ineligibility for all other public assistance programs available within the Commonwealth.

Given the program's legislative purpose of assisting all Massachusetts residents whenever they are in need, we presume that the statute was passed on the assumption that those not between the ages of 18 and 65 would not be needy because they would be eligible for federally funded public assistance programs available within the Commonwealth. Therefore, passage of the statute was primarily an effort to conserve purely state funded GR assets.

11. We note in passing that Mrs. Morales began receiving AFDC because she was pregnant. This was correct under previous decisions of this Circuit. Nevertheless, the Supreme Court has recently held, in Burns v. Alcala, —— U.S. ——, 95 S.Ct. 1180, 43 L. Ed.2d 469 (1975), that such benefits are not necessarily mandated by federal law. This development, however, does not change our decision not to reach the question of Mrs. Morales' ability to sue in a representative capacity.

12. The defendants in *Morales* have moved the Court to either dismiss the action or to join the parents of the minor plaintiffs pursuant to Rule 19 of the Federal Rules of Civil Procedure. We deny the motion because the parents' situation fits none of the requirements of Rule 19. We further deny defendants' claim that a guardian ad litem is necessary to protect the interests of these minors. Their interests have been amply protected by present counsel.

■ Additionally, the statute operates to classify an individual's eligibility for GR according to age. Such classifications are valid if they can pass the Equal Protection Clause's test of rationality. Murgia v. Commonwealth of Massachusetts Board of Retirement, 376 F. Supp. 753, 754–755 (D.Mass.1974).

■■ Once a state decides to confer public assistance benefits upon its residents, it has great latitude in how it allocates them. King v. Smith, 392 U.S. 309, 319–320, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Nevertheless, the state must at all times, act fairly. This requirement is especially crucial when welfare benefits or "entitlements", the source of life to many, are involved. See, e. g., Goldberg v. Kelly, 397 U.S. 254, 261–262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

> One aspect of fundamental fairness, guaranteed by the Due Process Clause . . ., is that individuals similarly situated must receive the same treatment by the Government. As Mr. Justice Jackson put it, the Government "must exercise [its] powers so as not to discriminate between [its] inhabitants except upon some reasonable differentiation fairly related to the object of the regulation." . . . It is a corollary of this requirement that, in order to determine whether persons are indeed similarly situated, "*such procedural protections as the particular situation demands*" must be provided. United States Department of Agriculture v. Murry, 413 U.S. 508, 517, 93 S.Ct. 2832, 2837, 37 L.Ed.2d 767 (1973), (Mr. Justice Marshall, concurring), (emphasis added; footnotes omitted).

"Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." Vlandis v. Kline, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973). See, Cleveland Board of Education v. LaFleur, 414 U.S. 632, 644, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). In recent years, the Supreme Court has addressed this topic frequently in decisions which, we think, govern the situation at hand. In each case, the Court has examined the rationality of the presumption and the governmental interest served by it. It has then determined the interest of the individual and the presumption's effect upon him. "Where the private interests affected are very important and the governmental interest can be promoted without much difficulty by a well-designed hearing procedure, the Due Process Clause requires the Government to act on an individualized basis . . . ." United States Department of Agriculture v. Murry, *supra*, 413 U.S. at 518, 93 S.Ct. at 2837 (Mr. Justice Marshall, concurring).

In Vlandis v. Kline, *supra*, the Court dealt with a Connecticut statute that created a "conclusive and unchangeable presumption of nonresident status from the fact that, at the time of application for admission, the student, if married, was then living outside of Connecticut, or, if single, had lived outside the State at some point during the preceding year." 412 U.S. at 443, 93 S.Ct. at 2232. Under the pertinent state statutory scheme, nonresidents were forced to pay higher tuition rates and fees at Connecticut schools than residents. Connecticut proffered three interests to justify the presumption. All were rejected by the Court. In holding the statute unconstitutional, the Court stated:

> [I]t is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebutable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination. Rather, standards of due process require that the State allow such an individual the opportunity to present evidence showing that he is a bona fide resident entitled to the in-state rates. Vlandis v. Kline, *supra*, at 452, 93 S.Ct. at 2236.

In United States Department of Agriculture v. Murry, *supra,* the Court held invalid, as repugnant to the Due Process Clause, a federal food stamp regulation creating an irrebutable presumption that households, containing a person 18 years of age or older who was claimed as a tax dependent for the previous year by a taxpayer not a member of an eligible household, were not in need of food stamps. The purpose of the regulation was to prevent college students and "hippies", with access to family resources, from abusing the program. But the operation of the statute proved to be inflexible and barred, without an individualized hearing, legitimately needy households not containing college students or persons with access to family resources. Thus, the Court " . . . conclude[d] that the deduction taken for the benefit of the parent in the prior year is not a rational measure of the need of a different household with which the child of the tax-deducting parent lives and rests on an irrebutable presumption often contrary to fact. It therefore lacks critical ingredients of due process . . . ." United States Department of Agriculture v. Murry, *supra,* 413 U.S. at 514, 93 S.Ct. at 2846.[13]

 Applying these principles to the factual situation in *Ryan,* we find that the presumption created by M.G.L. c. 117, § 4, arbitrarily disqualifies needy persons over 65 from receiving GR benefits. Whatever rationality the statute may have had when it was passed has now gone by the boards with the passage of the new Title XVI, 42 U.S.C. § 1381 et seq.

Once a person reaches the age of 65, and therefore is eligible for benefits under SSI, his need does not automatically vanish. The fact is that he must wait two to three months before his initial SSI payments begin. Thus, the fact presumed in passing M.G.L. c. 117, § 4 —that persons over 65 would not be needy because they were eligible for old-age benefits—is not, in fact, true.

 The statute cannot be justified by the Commonwealth's interest in conserving its resources. Massachusetts currently has the opportunity, under 42 U.S.C. § 1383(g)(1), to be fully reimbursed by the federal government for all GR payments furnished to aged SSI applicants awaiting their initial SSI payment. By shunning this opportunity and forcing these elderly citizens to beg or borrow to meet their daily expenses, the Commonwealth and its Department of Public Welfare have displayed a shocking insensitivity to the needs of the very persons who have, throughout their long lives, sacrificed and worked in the interest of many of us.

Similarly, the statute cannot be justified by the Commonwealth's interest in administrative speed and efficiency. We recognize that myriad administrative problems may arise in providing benefits to these persons for such a short period of time. However, these problems have not prevented the Commonwealth from providing interim GR benefits to SSI beneficiaries who are under 65. *See* p. 92, *supra.* In any event, "the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." Stanley v. Illinois, *supra,* at 656, 92 S.Ct. at 1215.

 We need not dwell upon the statute's effect on the three female

---

13. Similar presumptions, contrary to fact, were held to violate the Due Process Clause in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972). In each case, the Court held that whatever the interest the State had in legislating by presumption, due process demanded an individualized determination.

plaintiffs who represent class two in *Morales*. They are eligible for other public assistance programs available within the Commonwealth.[14] M.G.L. c. 119, § 23, subds. A, C. Therefore, the statute, with respect to them, is a rational measure to conserve state funds or to preserve the family unit.

 Nevertheless, the irrationality of the statute and the presumption it creates is apparent with respect to its effect upon those in Mr. Parzyck's class in *Morales*. The Commonwealth purportedly seeks, through its GR program, to assist all of its needy residents. M.G.L. c. 117, § 4. Yet the statute arbitrarily forecloses residents under 18 from proving their need for such aid. Lest we forget, these persons are also residents of the Commonwealth and have rights protected by the Fourteenth Amendment and the Bill of Rights. *See,* In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The fact presumed in the statute—that all persons under 18 are eligible for other forms of public assistance, and therefore not in need of GR assistance—is plainly not substantiated by the facts. It may be true in some cases, but " . . . [it] is not necessarily or universally true." Vlandis v. Kline, *supra,* 412 U.S. at 452, 93 S.Ct. at 2236. Consequently, it is overly broad and inflexible. *See,* United States Department of Agriculture v. Murry, *supra,* 413 U.S. at 513, 93 S.Ct. 2832. Due process requires a more individualized determination of eligibility.

We are not persuaded by the interests proffered by the Commonwealth as justification for the statute. As discussed previously, administrative speed and efficiency is no justification for the denial of constitutional rights. Nor can the statute be upheld because it tends to preserve the family unit which, in turn, insures proper guidance, support and supervision for minors.[15] These grounds are clearly irrelevant to Mr. Parzyck who is married and legally free of parental support or control.

Furthermore, the statute cannot stand as an attempt to conserve state funds. Such an argument was rejected in Goldberg v. Kelly, *supra,* where the Court held that the additional state expense of holding a due process hearing before the termination of welfare benefits did not countervail "the individual's overpowering need . . . not to be wrongfully deprived of assistance." 397 U.S. 254, 261, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287, quoting Kelly v. Wyman, D.C.N.Y., 294 F.Supp. 893, 901. Likewise, in this case we do not think that the additional expense of providing GR benefits, after an individualized determination of eligibility, to this *extremely limited* class of young persons outweighs the need of these individuals to obtain " . . . the very means by which to live." Goldberg v. Kelly, *supra,* 397 U.S. at 264, 90 S.Ct. at 1018.[16]

Normally, we would refrain from discussing a second constitutional issue if the first were sufficient to dispose of the matter at hand. This statute can

---

14. These plaintiffs have not alleged that they have been refused foster care. Consequently, we need not comment upon the constitutionality of the statute in that possible situation. Nevertheless, we suggest that the Department advise, in the future, those GR applicants who fall within class two of the existence of any public assistance program for which they may qualify. Such advice should also include information pertaining to application procedures for these programs.

15. These grounds are applicable to a situation which we choose not to discuss this day. *See,* fn. 14, *supra*.

16. While Mr. Parzyck's parents have no legal duty to support their son and his wife, they have reluctantly provided them room and board. Support of this type can be considered when determining the size of the GR payment. *See,* M.P.A.P.M., c. IV, § B, p. 1. Thus, the amount of GR benefits to be paid to many in Mr. Parzyck's class will be less than the full GR grant. This further underscores the advisability of determining a person's eligibility for assistance on an individual basis rather than disqualifying him automatically.

certainly be struck down on due process grounds alone. Nevertheless, we note a disagreement amongst the Justices of the Supreme Court as to whether cases like the present should be analyzed according to the Due Process or the Equal Protection Clause of the Fourteenth Amendment. *See* Cleveland Board of Education v. LaFleur, *supra*, 414 U.S. at 651–660, 94 S.Ct. at 801–806 (concurring and dissenting opinions of Justices Powell and Rehnquist, respectively). Therefore, we feel constrained to apply equal protection analysis to the facts before us.

The Equal Protection Clause of " . . . [t]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). Yet "a classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Id.* at 76, 92 S.Ct. at 254, quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). In situations where classes are divided by age, "[t]o satisfy minimal standards of rationality the line must be drawn within a range where fairness, or some appreciable state interest, exists, even if no specific point within that range is preferable to any other." Murgia v. Commonwealth of Massachusetts Board of Retirement, *supra*, at 755.

The stated purpose of the GR program is to aid all residents of Massachusetts when they are in need. M.G.L. c. 117, § 1. Despite this, persons not between the ages of 18 and 65 are denied GR assistance even if their need is as substantial as those declared eligible for GR. M.G.L. c. 117, § 4. In other words,

persons similarly situated are denied assistance solely because of their age. Yet, we think it evident that need is a common denominator that cannot be classified according to age.[17] Therefore, the classification created by M.G.L. c. 117, § 4, is based upon a criterion that bears no relation to the legislative purpose of the GR program.

Having concluded that the classification bears no relation to the program's purpose, we must now ask whether " . . . the challenged classification . . . rationally further[s] some [other] legitimate governmental interest . . . ." United States Department of Agriculture v. Moreno, 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1974).

M.G.L. c. 117, § 4, is primarily aimed at conserving state GR funds. Obviously any measure that cuts financial benefits to the people of a state conserves state funds. But is this statute a rational means to accomplish that goal? We think not.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1971), the Supreme Court held that a Maryland regulation, which established a ceiling of approximately $250 per month to an AFDC family regardless of its size or actual need, did not violate the Equal Protection Clause of the Fourteenth Amendment. In applying the "reasonable basis" test, the Court found the regulation to be a rational effort on the part of "state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." Dandridge v. Williams, *supra*, at 487, 90 S.Ct. at 1163. The Court declared further that "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications

---

17. This case must be distinguished from those in which individuals were classified according to subjective expectancies of maturity to perform a certain function. [E. g., age of majority to vote, drink alcohol, serve on juries, or age of retirement.] In those cases a line, however subjective, *had* to be drawn somewhere. In this case, the drawing of *any* line, without reason, cannot stand.

made by its laws are imperfect." *Dandridge v. Williams, supra,* at 485, 90 S. Ct. at 1161.

Indeed, the Maryland welfare scheme in *Dandridge* was imperfect, but at least it provided *some* benefits to those who were eligible for AFDC.[18] In contrast, the statute before us today categorically denies *any* aid to otherwise eligible residents of Massachusetts solely because of their age which, we repeat, is irrelevant to need. Its effect is, therefore, more akin to that of the statute in United States Department of Agriculture v. Moreno, *supra,* which completely " . . . exclude[d] from participation in the food stamp program any household containing an individual who is unrelated to any other member of the household." 413 U.S. at 529, 93 S.Ct. at 2823. In that case, the Government attempted to justify the statute "as rationally related to the clearly legitimate governmental interest in minimizing fraud in the administration of the food stamp program." *Id.* at 535, 93 S.Ct. at 2826. This justification was based upon the wholly unsubstantiated premise that "unrelated" households were more prone to fraudulent abuse of the program than "related" households. Given the questioned validity of the assumption underlying the government's justification, the ineffectiveness of the statute in preventing fraud, and the availability of other provisions to combat fraud in the food stamp program, the Court struck down the statute as "wholly without any rational basis" in violation of the Equal Protection Clause.

In the present case, the underlying premise of the statute's classification by age is more than "wholly unsubstantiated"—it is plainly incorrect. That is, it was error for the legislature to assume that those not between 18 and 65 are eligible for other public assistance programs, and therefore, are not in need of state GR funds. It is totally unreasonable, in our view, to deny, solely on account of a factual misconception, any GR benefits to many residents of Massachusetts whose need is every bit as great as those declared to be eligible for GR.

We have previously rejected the remaining state interests which allegedly serve to justify this statute. Much of what was said there applies here also. Suffice it to say that none of these interests is rationally furthered by the classification.

To summarize, in Ryan v. Minter, we find that M.G.L. c. 117, § 4, and the state welfare regulations established pursuant to it, are violative of both the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution insofar as they bar *Ryan* plaintiffs and the class they represent, from receiving GR benefits pending receipt of their initial SSI payment.

In Morales v. Minter, we hold that M.G.L. c. 117, § 4, and the state welfare regulations established pursuant to it, are violative of both the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution insofar as they bar plaintiff Parzyck, and the class he represents, from receiving GR benefits. We further conclude that the statute and accompanying state welfare regulations are not violative of the constitutional rights of plaintiffs Hall, Andino and Rodriguez, or the class they represent.

Judgment will be entered declaring M.G.L. c. 117, § 4, unconstitutional and void insofar as it violates the Fourteenth Amendment rights of *Ryan* plain-

---

18. Before the Court reached the equal protection issue, it discussed whether Maryland's grant system violated § 402(a)(10) of the Social Security Act, 42 U.S.C. § 602 (a)(10). In holding that it did not, the Court stated that "[s]o long as some aid is provided to all eligible families and all eligible children, the statute itself is not violat- ed." Dandridge v. Williams, *supra,* 397 U.S. at 481, 90 S.Ct. at 1159. Although it was not explicitly stated in the equal protection discussion, we think it fair to say that this factor—that at least some aid was provided to all eligible families—played an important role in assessing the "reasonableness" of the Maryland grant regulation.

tiffs and the class they represent and the rights of Mr. Parzyck and the class he represents. Defendants, their successors in office, their agents and employees, and all persons in active concert and participation with them, are permanently enjoined from refusing to grant: (1) to Daniel Parzyck (*Morales* plaintiff), and all persons similarly situated, GR benefits in the amount to which they are otherwise entitled solely on the ground that they are less than 18 years of age; and (2) to *Ryan* plaintiffs, and all other persons similarly situated, GR benefits in the amount to which they are otherwise entitled solely on the ground that they are over 65 years of age.

The requested relief is denied with respect to plaintiffs Hall, Rodriguez and Andino (*Morales* plaintiffs) and the class they represent. We take no definitive action as to Mr. and Mrs. Morales for reasons contained herein.

So ordered.