# UNITED STATES DEPARTMENT OF AGRICULTURE ET AL. v. MURRY ET AL.

No. 72–848. Argued April 23, 1973—Decided June 25, 1973

Douglas, J., delivered the opinion of the Court, in which Brennan, Stewart, White, and Marshall, JJ., joined. Stewart, J., *post*, p. 514, and Marshall, J., *post*, p. 517, filed concurring opinions. Blackmun, J., filed a dissenting opinion, *post*, p. 520. Rehnquist, J., filed a dissenting opinion, in which Burger, C. J., and Powell, J., joined, *post*, p. 522.

*Keith A. Jones* argued the cause for appellants. With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Wood, Walter H. Fleischer,* and *William Kanter.*

*Ronald F. Pollack* argued the cause for appellees. With him on the brief was *Roger A. Schwartz.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Food Stamp Act of 1964, 7 U. S. C. § 2011 *et seq.,* as amended in 1971, 84 Stat. 2048, has been applied to these appellees so as to lead the three-judge District Court to hold one provision of it unconstitutional. 348 F. Supp. 242. We noted probable jurisdiction. 410 U. S. 924.

Appellee Murry has two sons and ten grandchildren in her household. Her monthly income is $57.50, which comes from her ex-husband as support for her sons. Her expenses far exceed her monthly income. By payment, however, of $11 she received $128 in food stamps. But she has now been denied food stamps because her ex-husband (who has remarried) had claimed her two sons and one grandchild as tax dependents in his 1971 income tax return. That claim, plus the fact that her eldest son is 19 years old, disqualified her household for food stamps under § 5 (b) of the Act.[1] Appellee Alderete is in com-

---

[1] Section 5 (b) of the Act provides in part: "Any household which includes a member who has reached his eighteenth birthday and *who is claimed as a dependent child for Federal income tax purposes by a taxpayer who is not a member of an eligible household,* shall be ineligible to participate in any food stamp program established pursuant to this chapter during the tax period such dependency is claimed and for a period of one year after expiration of such tax period. . . ." 7 U. S. C. § 2014 (b). (Emphasis added.)

The Regulations provide: " 'Dependent' for the purpose of § 271.3 (d) of this subchapter, means a person claimed as a dependent for Federal income tax purposes by a parent or guardian and living apart

parable straits because her ex-husband claimed the five children, who live with their mother, as tax dependents, the oldest being 18 years old. Appellee Beavert's case is similar. Appellee Lee is the mother of five children, her entire income per month being $23 derived from public assistance. Her five children live with her. Her monthly bills are $249, of which $148 goes for food. Her husband is not a member of her household; he in fact deserted her and has supplied his family with no support. But he claimed the two oldest sons, ages 20 and 18, as tax dependents in his 1971 tax return, with the result that the wife's household was denied food stamps. Appellee Nevarez is in comparable straits.

Appellee Joe Valdez is 18 years old and married; and he and his wife have a child. He lives wholly on public

from the household of such parent or guardian." 7 CFR § 270.2 (q).

"Any household which includes a member who has reached his 18th birthday and who is claimed as a dependent for Federal income tax purposes by a member of a household which is not certified as being eligible for food assistance shall be ineligible to participate in the program during the tax period such dependency is claimed and for a period of 1 year after expiration of such tax period." 7 CFR § 271.3 (d).

The relevant exemption provision in § 151 (e)(1) of the Internal Revenue Code, as amended, 26 U. S. C. § 151 (e)(1) (1970 ed. and Supp. I), reads:

"An exemption of $750 [shall be allowed] for each dependent (as defined in section 152)—

"(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $750, or

"(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. . . ."

And the term "dependent" is defined as meaning "any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer . . . :

"(1) A son or daughter of the taxpayer . . . ." 26 U. S. C. § 152 (a)(1).

assistance and applied for food stamps. His application was rejected because his father Ben claimed him as a tax dependent in his 1971 income tax return. Joe receives no support from Ben because Ben is in debt and unable to help support Joe.

Appellee Broderson is 18 and married to a 16-year-old wife and they have a small child. Their monthly income is $110 consisting of his wages at a service station. He cannot get food stamps because his father claimed him as a tax dependent. The father, however, gives him no support.

Appellee Schultz is 19 years old and she resides with a girl friend and the latter's two children. Appellee Schultz has no income of any kind but received food stamps for the household where she lived. Food stamps, however, were discontinued when her parents claimed her as a tax dependent but refused to give her any aid. She soon got married, but she and her husband were denied food stamps because her parents had claimed her for tax dependency.

These appellees brought a class action to enjoin the enforcement of the tax dependency provision of the Act; and, as noted, the three-judge court granted the relief.

Appellees are members of households that have been denied food stamp eligibility solely because the households contain persons 18 years or older who have been claimed as "dependents" for federal income tax purposes by taxpayers who are themselves ineligible for food stamp relief. Section 5 (b) makes the entire household of which a "tax dependent" was a member ineligible for food stamps for two years: (1) during the tax year for which the dependency was claimed and (2) during the next 12 months. During these two periods of time § 5 (b) creates a conclusive presumption that the "tax dependent's" household is not needy and has access to nutritional adequacy.

The Acting Administrator of the Food and Nutrition Service of the Department of Agriculture admitted in this case that:

"[I]n the case of households which have initially been determined to be ineligible for participation in the program on the basis of tax dependency, there are no factual issues to be presented or challenged by the household at such a hearing, other than the issue of whether or not a member of the household has been claimed as a dependent child by a taxpayer who is not a member of a household eligible for food assistance (a fact the household, in most cases, already will have disclosed in its application). If a household states that it has such a tax dependent member, the household is, in conformity with the Food Stamp Act, the program regulations, and the instructions of FNS governing the program administration by State agencies, determined to be ineligible." App. 83.

Thus, in the administration of the Act, a hearing is denied, and is not available as the dissent implies. As stated by the District Court the Act creates "an irrebuttable presumption contrary to fact." 348 F. Supp., at 243. Moreover, an income tax return is filed, say in April 1973, for the year 1972. When the dependency deduction is filed, the year for which the dependency claim was made has already passed. Therefore the disqualification for food stamps cannot apply to 1972 but only to 1973.

The tax dependency provision was generated by congressional concern about nonneedy households participating in the food stamp program.[2] The legislative

---

[2] Household participation is based on current circumstances, not past needs. Food stamp certifications for households on public assistance coincide with their welfare certification periods. 7 CFR §§ 271.4 (a) (1) and 271.4 (a) (4) (ii). For nonpublic assistance house-

history reflects a concern about abuses of the program by "college students, children of wealthy parents." [3] But, as the District Court said, the Act goes far beyond that goal and its operation is inflexible. "Households containing no college student, that had established clear eligibility for Food Stamps and which still remain in dire need and otherwise eligible are now denied stamps if it appears that a household member 18 years or older is claimed by someone as a tax dependent." 348 F. Supp., at 243.

Tax dependency in a prior year seems to have no relation to the "need" of the dependent in the following year. It doubtless is much easier from the administrative point of view to have a simple tax "dependency" test that will automatically—without hearing, without witnesses, without findings of fact—terminate a household's claim for eligibility for food stamps. Yet, as we recently stated in *Stanley* v. *Illinois,* 405 U. S. 645, 656:

> "[I]t may be argued that unmarried fathers are so seldom fit that Illinois need not undergo the administrative inconvenience of inquiry in any case, including Stanley's. The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the over-

holds, certification periods last normally only three months. 7 CFR § 271.4 (a) (4) (iii). Longer certification periods are provided only "if there is little likelihood of changes in household status." 7 CFR §§ 271.4 (a) (4) (iii) (b), (c), and (d).

[3] 116 Cong. Rec. 41979.

bearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones."

We have difficulty in concluding that it is rational to assume that a child is not indigent this year because the parent declared the child as a dependent in his tax return for the prior year. But even on that assumption our problem is not at an end. Under the Act the issue is not the indigency of the child but the indigency of a different household with which the child happens to be living. Members of that different household are denied food stamps if one of its present members was used as a tax deduction in the past year by his parents even though the remaining members have no relation to the parent who used the tax deduction, even though they are completely destitute, and even though they are one, or 10 or 20 in number. We conclude that the deduction taken for the benefit of the parent in the prior year is not a rational measure of the need of a different household with which the child of the tax-deducting parent lives and rests on an irrebuttable presumption often contrary to fact. It therefore lacks critical ingredients of due process found wanting in *Vlandis* v. *Kline,* 412 U. S. 441, 452; *Stanley* v. *Illinois, supra;* and *Bell* v. *Burson,* 402 U. S. 535.

*Affirmed.*

MR. JUSTICE STEWART, concurring.

The food stamp program was established in 1964 for the twin purposes of promoting the agricultural economy and alleviating hunger and malnutrition among the needy members of "the other America." 7 U. S. C. § 2011. Under this program, currently needy households whose members comply with a work requirement, 7 U. S. C. §§ 2014 (b), (c), are entitled to purchase enough food stamps to provide those households with nutritionally

adequate diets. In 1971, Congress became concerned with the possibility that nonneedy households were receiving food stamps, and its response was the enactment of Pub. L. 91–671. While the curbing of abuses in the administration of a government program is assuredly a legitimate purpose, that statute has given rise to constitutional questions in the present case and its companion, *United States Department of Agriculture* v. *Moreno, post,* p. 528.

The challenged provision in the present case is § 5 (b) of the Food Stamp Act, 7 U. S. C. § 2014 (b), as amended, 84 Stat. 2049. That section renders ineligible for food stamps any household that includes a member over 18 years of age who has been claimed as a tax dependent by a taxpayer who is not himself eligible for the stamps. What little legislative history there is suggests that the sole reason for enactment of this section was to prevent the receipt of food stamps by the sons and daughters of more affluent families. 116 Cong. Rec. 41979, 41981, 41993, 42021; cf. *Dandridge* v. *Williams,* 397 U. S. 471, 483–484.

Rather than requiring an individualized determination that a particular household linked to a relatively more affluent household by a claimed tax dependency was not in fact needy, Congress chose instead to utilize a conclusive presumption. The simple fact that a *household member* has been claimed as a tax dependent by a nonindigent taxpayer results in the complete termination of benefits for that *entire household* in the relevant tax period and in the subsequent 12 months as well. 7 U. S. C. § 2014 (b). It matters not whether that dependency claim was fraudulent, what the amount of support from the non-indigent taxpayer actually was,[1]

---

[1] Even if the amount of support received from the taxpayer leaves the household with income below the income eligibility standards, the statute under consideration would terminate benefits. A 5-person

whether that support was still available at the time the welfare officials learned of it, or even whether the claimed dependent was still living in the household.

This Court recently declared unconstitutional, under the Due Process Clause of the Fourteenth Amendment, a Connecticut statute establishing a permanent, conclusive presumption of nonresidency for purposes of qualifying for reduced tuition rates at a state university. *Vlandis* v. *Kline*, 412 U. S. 441. As we said in that case:

> "In sum, since Connecticut purports to be concerned with residency in allocating the rates for tuition and fees at its university system, it is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination. Rather, standards of due process require that the State allow such an individual the opportunity to present evidence showing that he is a bona fide resident entitled to the in-state rates." *Id.*, at 452.

See also *Morrissey* v. *Brewer*, 408 U. S. 471; *Stanley* v. *Illinois*, 405 U. S. 645; *Bell* v. *Burson*, 402 U. S. 535.

Similarly, I think, the conclusive presumption that led to the termination of the appellees' benefits without

household, for example, might receive $120 in public assistance each month, plus $121 from a divorced non-indigent spouse. If that household had within it a child who was age 18 or older, and if the spouse claimed that child as a dependent, the household would be ineligible for food stamps. Yet in this hypothetical situation, the household's monthly income would be $241, whereas under the Department of Agriculture's own income standards a household of five can earn up to $440 per month without being disqualified for food stamps. 37 Fed. Reg. 7724. The opinion of the Court points out how totally arbitrary the challenged statute is in operation.

any opportunity for them to prove present need denied them due process of law.[2] Accordingly, I concur in the opinion and judgment of the Court.

Mr. Justice Marshall, concurring.

I join the opinion of the Court. I wish to state briefly what I believe are the analytic underpinnings of that opinion. One aspect of fundamental fairness, guaranteed by the Due Process Clause of the Fifth Amendment, is that individuals similarly situated must receive the same treatment by the Government. As Mr. Justice Jackson put it, the Government "must exercise [its] powers so as not to discriminate between [its] inhabitants except upon some reasonable differentiation fairly related to the object of the regulation." *Railway Express Agency* v. *New York,* 336 U. S. 106, 112 (1949) (concurring opinion). It is a corollary of this requirement that, in order to determine whether persons are indeed similarly situated, "such procedural protections as the particular situation demands" must be provided. *Morrissey* v. *Brewer,* 408 U. S. 471, 481 (1972). Specifically, we must decide whether, considering the private interest affected and the governmental interest sought to be advanced, a hearing must be provided to one who claims that the application of some general provision of the law aimed at certain abuses will not in fact lower the incidence of those abuses but will instead needlessly harm him. Cf. *Reed* v. *Reed,*

---

[2] The Congress has alternative means available to it by which its purpose can be achieved. The Food Stamp Act, as amended, already provides that households must demonstrate present neediness to qualify, 7 U. S. C. § 2014 (b), and that its members must under certain circumstances accept available employment, *id.,* § 2014 (c). There is no reason that enforcement of these provisions cannot be strengthened if the Congress believes that fraud is taking place. There are already criminal penalties in effect for fraudulent acquisition, use, or transfer of food stamps. *Id.,* §§ 2023 (b), (c).

404 U. S. 71 (1971); *Vlandis* v. *Kline,* 412 U. S. 441 (1973). In short, where the private interests affected are very important and the governmental interest can be promoted without much difficulty by a well-designed hearing procedure, the Due Process Clause requires the Government to act on an individualized basis, with general propositions serving only as rebuttable presumptions or other burden-shifting devices. That, I think, is the import of *Stanley* v. *Illinois,* 405 U. S. 645 (1972).

Is this, then, such a case? Appellants argue that Congress could rationally have thought that persons claimed as tax dependents by a taxpayer himself not a member of an eligible household in one year could, during that year and the succeeding one, probably receive sufficient funds from the taxpayer to offset their need for food stamps. If those persons received food stamps, they would be denying to the truly needy some of the limited benefits Congress has chosen to make available. The statute, on this view, is aimed at preventing abuse of the program by persons who do not need the benefits Congress has provided. Even if, as appellants urge, the statute is interpreted to make ineligible for food stamps only those persons validly claimed as tax dependents, see Reply Brief for Appellants 2–3, I do not think that Congress adopted a method for preventing abuse that is reasonably calculated to eliminate only those who abuse the program. In particular, it could not be fairly concluded that, because *one* member of the household had received half his support from a parent, the *entire* household's need for assistance in purchasing food could be offset by outside contributions.

It is, of course, quite simple for Congress to provide an administrative mechanism to guarantee that abusers of the program were eliminated from it. All that is needed is some way for a person whose household would

otherwise be ineligible for food stamps because of this statute to show that the support presently available from the person claiming a member of the household as a tax dependent does not in fact offset the loss of benefits.* Reasonable rules stating what a claimant must show before receiving a hearing on the question could easily be devised. We deal here with a general rule that may seriously affect the ability of persons genuinely in need to provide an adequate diet for their households. In the face of readily available alternatives that might prevent abuse of the program, Congress did not choose a method of reducing abuses that was "fairly related to the object of the regulation," by enacting the statute challenged in this case.

This analysis, of course, combines elements traditionally invoked in what are usually treated as distinct classes of cases, involving due process and equal protection. But the elements of fairness should not be so rigidly cabined. Sometimes fairness will require a hearing to determine whether a statutory classification will advance the legislature's purposes in a particular case so that the classification can properly be used only as a burden-shifting device, while at other times the fact that a litigant falls within the classification will be enough to justify its application. There is no reason, I believe, to categorize inflexibly the rudiments of fairness. Instead, I believe that we must assess the public and private interests affected by a statutory classification and then decide in each instance whether individualized determination is required or categorical treatment is permitted by the Constitution.

---

*Such a mechanism must be made available, on the interpretation of the statute advanced by appellants, to persons who contend that they were not validly claimed as dependents.

MR. JUSTICE BLACKMUN, dissenting.

Section 5 (b) of the Food Stamp Act, which the Court today holds unconstitutional, is not happily drafted and surely is not the kind of statute that attracts sympathetic review. Its purposes, however, are conceded to be laudatory. And, indeed, they are, for the statute seeks to prevent widespread abuse of the federal food stamp program by nonindigents and college students, with consequent denial of the full benefit of the program to those seriously in need of assistance.

The Court, however, invalidates § 5 (b) for, apparently, two reasons. The first is that tax dependency in one calendar year is tied to the subject's lack of need in the following year, and this, it is said, has no rational connection. The second, although it may not be clearly articulated, is that all that is needed to disqualify a household is the presence in it of a person over 18 who is claimed as a dependent for federal income tax purposes by someone outside the household. That this is a reason is quite apparent from the Court's special emphasis on the claims of dependency said to have been asserted by the father or parents of appellees Valdez, Broderson, and Schultz, even though the parent or parents, according to affidavits, gave "no support" or refused to give "any aid," to use the Court's words, *ante,* at 511.

For me, neither reason is persuasive. As I read § 5 (b) of the Act, see *ante,* at 509 n. 1, the years of ineligibility for food stamps are "the tax period such dependency is claimed" and the year that follows. They are not the latter year and the one subsequent thereto, as the Court seems to indicate. I confess that there must be some practical awkwardness in relating the food stamp year to the tax dependency year, for one often cannot know that he is being claimed as a tax dependent for a given year until the claimant files his income tax return

for that year some time after its close. Despite this fact, the statute, for me, is clear and, at least, acceptable, and I would not rewrite it on a pragmatic basis, as, I think, the Court has done. Furthermore, the "year after" provision is not without rational basis, for Congress, in allocating limited resources, has determined that by this means it recoups in the later year the loss sustained in the earlier year when food stamps were improperly claimed.

My second concern centers in the meaning of the words, "who is claimed as a dependent child for Federal income tax purposes," in § 5 (b) of the Act. I cannot believe that the mere fact of claiming is sufficient or that that is what Congress intended. It seems obvious to me that "claimed" in this context has only one meaning, that is, *properly* claimed for income tax purposes, and not the mere assertion of dependency in the return. This would be the sensible construction of the statute. It is obvious and clear, from the Court's description of the Valdez, Broderson, and Schultz situations, *ante,* at 510–511, that the parent or parents who claimed those appellees as income tax dependents were not at all entitled to make those claims. They clearly did not satisfy the requirements of § 151 (e)(1) of the Internal Revenue Code of 1954, 26 U. S. C. § 151 (e)(1). Valdez' problem is with his father, not with the food stamp program, if the facts the Court states are accurate. The same is true of Broderson. The same is true of Schultz.

Each of these aspects, which the Court chooses not to analyze and prefers, instead, to resolve by convenient nullification of the statute, could be handled by an appropriate hearing directed to the ascertainment of the actual facts. In that hearing it may be shown whether Joe Valdez, in fact, "receives no support from Ben." If this be true, Joe should not automatically be ineligible

for the program, and Ben's improper claim of Joe as an income tax dependent should have no food stamp consequence whatsoever. So it would be with appellees Broderson and Schultz. The same may be true as to the remaining appellees with respect to whom claims of dependency status, on the affidavits filed, are at least questionable.

I, therefore, would vacate the judgment of the District Court and remand the case for a hearing directed to the development of the underlying facts in the light of § 5 (b) of the Food Stamp Act and of § 151 (e) (1) of the 1954 Internal Revenue Code, and for the entry of a new judgment in the light of those facts as so ascertained.

Mr. Justice Rehnquist, with whom The Chief Justice and Mr. Justice Powell concur, dissenting.

Appellees challenge on constitutional grounds a section of the most recent congressional revision of the Food Stamp Act, 7 U. S. C. § 2011 *et seq.*, whereby households containing persons 18 years or older who have been claimed as "dependents" for income tax purposes are made ineligible to receive food stamps. The Court's opinion sustains this challenge. Referring to what it conceives to be the legislative aim in enacting such a limitation, "a concern about abuses of the program by 'college students, children of wealthy parents,'" the opinion states that "the Act goes far beyond that goal and its operation is inflexible," *ante,* at 513.

Notions that in dispensing public funds to the needy Congress may not impose limitations which "go beyond the goal" of Congress, or may not be "inflexible," have not heretofore been thought to be embodied in the Constitution. In *Dandridge* v. *Williams,* 397 U. S. 471 (1970), the Court rejected this approach in an area of welfare legislation that is indistinguishable from the food

stamp program here involved. There the District Court, in the words of this Court,

> "while apparently recognizing the validity of at least some of these state concerns, nonetheless held that the regulation 'is invalid on its face for over-reaching,' 297 F. Supp., at 468—that it violates the Equal Protection Clause '[b]ecause it cuts too broad a swath on an indiscriminate basis as applied to the entire group of AFDC eligibles to which it purports to apply . . . .' " *Id.*, at 484.

Applying the Equal Protection Clause of the Fourteenth Amendment to state action, the Court reversed the District Court and held:

> "[T]he concept of 'overreaching' has no place in this case. For here we deal with state regulation in the social and economic field, not affecting freedoms guaranteed by the Bill of Rights, and claimed to violate the Fourteenth Amendment only because the regulation results in some disparity in grants of welfare payments to the largest AFDC families. For this Court to approve the invalidation of state economic or social regulation as 'overreaching' would be far too reminiscent of an era when the Court thought the Fourteenth Amendment gave it power to strike down state laws 'because they may be unwise, improvident, or out of harmony with a particular school of thought'. . . .
>
> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results

in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78." *Id.,* at 484–485.

In placing the limitations on the availability of food stamps which are involved in this case, Congress has not in any reasoned sense of that word employed a conclusive presumption as stated by the majority, *ante,* at 511, 512, and MR. JUSTICE STEWART in his concurring opinion, *ante,* at 516; it has simply made a legislative decision that certain abuses which it conceived to exist in the program as previously administered were of sufficient seriousness to warrant the substantive limitation which it enacted. There is a qualitative difference between, on the one hand, holding unconstitutional on procedural due process grounds presumptions which conclude factual inquiries without a hearing on such questions as fault, *Bell* v. *Burson,* 402 U. S. 535 (1971), the fitness of an unwed father to be a parent, *Stanley* v. *Illinois,* 405 U. S. 645 (1972), or, accepting the majority's characterization in *Vlandis* v. *Kline,* 412 U. S. 441 (1973), residency, and, on the other hand, holding unconstitutional a duly enacted prophylactic limitation on the dispensation of funds which is designed to cure systemic abuses. Cf. *Mourning* v. *Family Publications Service, Inc.,* 411 U. S. 356 (1973); *Ginsberg* v. *New York,* 390 U. S. 629, 643 (1968).

Thus, we deal not with the law of evidence, but with the extent to which the Fifth Amendment permits this Court to invalidate such a determination by Congress. In *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 487–488 (1955), the Court said:

"But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."

Accord, *Dandridge* v. *Williams, supra; Ferguson* v. *Skrupa,* 372 U. S. 726 (1963); *Flemming* v. *Nestor,* 363 U. S. 603, 611–612 (1960).

The majority concludes that a "deduction taken for the benefit of the parent in the prior year is not a rational measure of the need of a different household with which the child of the tax-deducting parent lives." *Ante,* at 514. But judged by the standards of the foregoing cases, the challenged provision of the Food Stamp Act has a legitimate purpose and cannot be said to lack any rational basis. Section 5 (b) declares ineligible for food stamps "[a]ny household which includes a member who has reached his eighteenth birthday and who is claimed as a dependent child for Federal income tax purposes by a taxpayer who is not a member of an eligible household." Thus, in order to disqualify a household for food stamps, the taxpayer claiming one of its members as a dependent must both provide over half of the dependent's support and must himself be a member of a household with an income large enough to disqualify that household for food stamps. These characteristics indicate that the taxpayer is both willing and able to provide his dependent with a significant amount of support. To be sure, there may be no perfect correlation between the fact that the taxpayer is part of a household which has income exceeding food stamp eligibility standards and his provision of enough support to raise his dependent's household above such standards. But there is some correlation, and the provision is, therefore, not irrational. *Dandridge* v. *Williams, supra.*\*

---

\*The Court's opinion makes much of the facts that there may be no relationship between the tax dependent's parent and the remaining members of the household, that they may be completely destitute, and that they may be one or 10 or 20. *Ante,* at 514. Sec-

Nor is § 5 (b) deprived of a rational basis because disqualification of the household extends one year beyond the year in which the dependency deduction is claimed. Since income tax returns are not filed until after the termination of the tax year, the carryover provision is the only practical means of enforcing the congressional purpose unless Congress were to establish an administrative adjudication procedure wholly independent of the existing tax collection structure. Such an alternative system would doubtless have its own delays, inefficiencies, and inequities. Under these circumstances we cannot say that Congress acted irrationally in judging a person's need in one year by whether he was claimed as a tax dependent in the previous year.

Finally, the fact that the statute as presently administered may operate to deny food stamps on the basis of fraudulent as well as lawful dependency deduction claims does not, as suggested by the three-judge District Court, 348 F. Supp. 242, 243 (DC 1972), render it unconstitu-

---

tion 3 (e) of the Food Stamp Act, 7 U. S. C. § 2012 (e), provides in relevant part:

"The term 'household' shall mean a group of . . . individuals . . . who . . . are living as one economic unit . . . ."

In its instructions to the state agencies administering the food stamp program, the Department of Agriculture's Food and Nutrition Service defines "economic unit" as meaning that "the common living expenses are shared from the income and resources of all members and that the basic needs of all members are provided for without regard to their ability or willingness to contribute." (Reply Brief for Appellants in No. 72–534, O. T. 1972, *U. S. Dept. of Agriculture* v. *Moreno,* 9 n. 19, *post,* p. 528.)

The majority does not question that Congress could rationally so choose to dispense welfare benefits to "economic units" rather than to individuals. *Dandridge* v. *Williams,* 397 U. S. 471 (1970). Since the resources of the household member claimed as a tax dependent are by definition available to the entire household, it is rational to disqualify such units containing ineligible tax dependents.

tional. A false dependency claim subjects the taxpayer to both civil and criminal penalties, and Congress may reasonably proceed on the assumption that taxpayers will obey the law.

The prior holdings of the Court convince me that this limitation which Congress has placed on the availability of food stamps does not violate the Due Process Clause of the Fifth Amendment and I therefore dissent from the Court's affirmance of the judgment of the District Court.