**Annie TYSON et al., Appellees,**

v.

**Edward W. MAHER, Commissioner of the State of Connecticut Welfare Department, et al., Appellants.**

**No. 1332, Docket 75–7202.**

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1975.

Decided Sept. 29, 1975.

Marilyn Kaplan Katz, Bridgeport, Conn. (James C. Sturdevant, Tolland-Windham Legal Assistance Program, Inc., Rockville, Conn., on the brief), for appellees.

Edmund C. Walsh, Asst. Atty. Gen. (Carl R. Ajello, Atty. Gen. of Conn., on the brief), for appellants.

Before OAKES, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

This appeal is by the Connecticut Welfare Commissioner from an order by the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge,* granting extensive relief in connection with Connecticut's administration of the federal Food Stamp Act, 7 U.S.C. § 2011 *et seq.*[1] *Tyson v. Norton,* 390 F.Supp. 545 (D.Conn.1975). Only two portions of the district court order are questioned here: first, the order to use a telephone or home interview in lieu of an office interview to certify food

---

1. The relief was based on findings that Connecticut had failed to comply with the "full participation" amendment to the Food Stamp Act in 1971, 7 U.S.C. § 2019(e)(5), *see* Act of Jan. 11, 1971, Pub.L.No.91–671 § 6(b), 84 Stat. 2051, requiring the state agency administering the Act to "undertake effective action . . . to inform low-income households concerning the availability and benefits of the food stamp program and insure the participation of eligible households." Jurisdiction below was based on 28 U.S.C. § 1337 and a class action was allowed under Fed.R.Civ.P. 23(a) and (b)(2). *Tyson v. Norton,* 390 F.Supp. 545, 549–50 (D.Conn.1975). Neither ruling is challenged here.

stamp applications in hardship situations where no household representative is able to visit the district office or circuit-riding location of the welfare department; second, the order to accept telephone applications for "emergency and immediate" replacement of lost, stolen or unmailed ATP[2] cards in the same hardship situations. We affirm that part of the order of Judge Blumenfeld which requires the State to provide home or telephone interviews for homebound applicants, but we vacate and remand so much of his order as pertains to the replacement of ATP cards in the light of recent Federal Nutrition Service instructions to state agencies administering the Act, which evidently were not called to his attention below, and which concern lost ATP cards, FNS(FS) Instruction 734–2(VII)(C)(2) (Rev. 2, Oct. 1, 1974) (requiring an affidavit of loss from the recipient prior to issuance of a replacement card).

■ The hardship situations for which Judge Blumenfeld ordered a home or telephone interview are those "in which no household representative is able to visit the district office or circuit-riding location because of sickness, injury, lack of transportation or the presence of preschool or other persons in the home re-

quiring care." 390 F.Supp. at 574. Appellant argues that the district court order amounts to an improper substitution of judicial judgment for the requirements of the federal regulations in that the latter[3] look primarily toward the interview of an "authorized representative" of the household, rather than an at home or telephone interview of the household head (or spouse). While we recognize that an agency's construction of its own statute and regulations is entitled to weight, see, e. g., Udall v. Tallman, 380 U.S. 1, 18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), we do not believe the district court here to have infringed the administrative prerogative.

■ The inconsistency of the FNS instructions, note 3 supra, with the district court's order is by no means so great as the appellant would have us believe. Judge Blumenfeld's order applies only to situations "in which no household representative is able to visit the district office or circuit-riding location . . . ." If the judge meant by "household representative" to include an "authorized representative," the term used in the FNS instructions, there would be no conflict at all since the situation in which neither the head of the household, the spouse nor an authorized representative were

2. An ATP card is an authorization (to a "certified . . . household") to purchase food coupons (stamps) at less than face value. These cards are valid for either two weeks or one month. If not used before the expiration date they become worthless.

3. The federal regulations generally provide that an interview may be conducted "in a personal contact in the office, in a home visit, or by a telephone call . . . ." 7 C.F.R. § 271.-4(a)(2)(ii), 40 Fed.Reg. 1890 (Jan. 9, 1975). But the Food and Nutrition Service (FNS) of the Department of Agriculture issues instructions to the state agencies in the form of The Food Stamp Certification Handbook, FNS (FS) Instruction 732–5 (Sept. 30, 1971), as amended by FNS (FS) Instruction 732–1 (Aug. 5, 1974), which provides in § 2131 that

[i]f household members are unable to make application because of employment, or health or transportation problems, etc., a responsible adult outside the household may be designated [in writing by the head of the household or the spouse] . . . [if the]

authorized representative is adequately aware of pertinent household circumstances. . . . It is important that the head of the household or the spouse prepare or review the application whenever possible, even though the authorized representative will actually be interviewed.

Under § 2122 of the FNS Instruction face-to-face interviews are preferred; documentation of justification for a home visit or telephone interview is required and mere inconvenience does not constitute sufficient justification. We assume, but do not decide, that the FNS instructions, which are not published in the Federal Register, do not run afoul of the APA, 5 U.S.C. § 553, because of the exception provided in 5 U.S.C. § 553(b)(A) for "interpretive rules." We note, however, that the responsible adult outside the household "may be designated," permissive language which on its face does not dictate appointment of an "authorized representative" to the exclusion of a home or telephone interview as is permitted under the regulation quoted in note 2 supra.

able to visit the welfare offices was not contemplated by the FNS instructions. Even if the order did not implicitly refer to the FNS "authorized representative," however, those instructions do not cover the situation where in a hardship case there is no "authorized representative . . . adequately aware of pertinent household circumstances," a gap which Judge Blumenfeld's order quite properly fills. It could parenthetically be noted that to the extent that the order permits or requires home interviews of the head of the household or spouse, the state agency might be obtaining better and presumably more accurate information than it would by an interview of some "authorized representative" and that in permitting telephone interviews as an alternative to the home interview the court was presumably aiding the State by lessening its administrative expense. But, these considerations aside, if it may be considered that to any extent the court fashions an alternative to the FNS provision for "authorized representative" interviewing, note 3 *supra,* the court does so in the exercise of its broad remedial powers and its action is sustainable as such, *see Bermudez v. United States Department of Agriculture,* 160 U.S.App. D.C. 150, 490 F.2d 718, 723 (1973) (retroactive benefits granted); *Carter v. Butz,* 479 F.2d 1084, 1088 (3d Cir.) (same), *cert. denied,* 414 U.S. 1103, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973),[4] to enforce the overriding purpose of the Food Stamp Act as set forth in 7 U.S.C. § 2011, *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 529, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 514, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (Stewart, *J.,* concurring). The order was made upon findings that the State had failed to take the effective action required by Congress to bring about full participation in the food stamp program.[5] 7 U.S.C. § 2019(e)(5). This was done with the approval, moreover, of the United States Department of Agriculture, which appeared below as amicus curiae and urged the court to make the ultimate determination, stating that the effectiveness with which the State agency is meeting the cited program requirements is a proper matter for the court's consideration.

■■ The second portion of the order challenged on this appeal, relating to the issuance in hardship cases of replacement ATP cards in the event of their loss, theft, mutilation or nondelivery, stands on a different footing. After the order was issued below, FNS issued a new instruction, FNS(FS) Instruction 734–2(VII)(C)(2) (Rev. 2, Oct. 1, 1974), which requires that before a replacement ATP card may be issued the recipient must "sign an affidavit that the original ATP card will be returned . . . if recovered by the household." The purpose of this requirement is obviously to reduce food stamp fraud since the extra ATP card would entitle the household to purchase extra stamps. We believe the district court will want to make certain that its order is not inconsistent with this requirement, perhaps by modifying its order in a manner which permits effectuation of it.[6] Of course, the court, on remand, may also wish to determine whether the requirements of the Admin-

---

**4.** *See generally Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

**5.** Connecticut was apparently one of nine states in the country lagging behind in its implementation of the so-called "outreach" program. 390 F.Supp. at 554 n. 11. The State had apparently defined "unable" in the original FNS Instruction 732–1(II)(B)(2) (1971) as "elderly, housebound *and* living alone," 390 F.Supp. at 559, rather than the more expansive

reading given by FNS on Aug. 5, 1974, *see* note 3 *supra.*

**6.** One such way might be to require the affidavit to be executed on the reverse side of the replacement card at the time of presentation to the local coupon-issuing bank; other methods have occurred to the parties and may occur to the learned district court. This remand leaves Chief Judge Blumenfeld to his own good devices.

istrative Procedure Act, 5 U.S.C. § 551 *et seq.,* apply to the issuance of the FNS instruction and, if they do, whether they have been complied with in this case. *See Rodway v. United States Department of Agriculture,* 514 F.2d 809, 813–14 (D.C.Cir.1975) (USDA has bound itself to requirements of APA and waived the 5 U.S.C. § 553(a)(2) exception from the Act for rules relating to public grants); *but see* 5 U.S.C. § 553(b)(A) (excepting "interpretative rules" from the "rulemaking" procedure requirement of the APA).

Judgment in accordance with opinion.