Dr. N. Jay ROGERS, Plaintiff,

W. J. Dickinson, Individually and as President of the Texas Senior Citizens Association, Port Arthur, Texas Chapter, Intervenor,

v.

Dr. E. Richard FRIEDMAN, Dr. John B. Bowen, Dr. Hugh A. Sticksel, Jr., Dr. John W. Davis, Dr. Sal Mora, Defendants,

Texas Optometric Association, Inc., Intervenor.

No. B–75–277–CA.

United States District Court, E. D. Texas, Beaumont Division.

Sept. 12, 1977.

Robert Q. Keith, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for plaintiff.

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for defendants in their individual capacities.

Joe R. Greenhill, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, Tex., for defendants, Texas Optometry Bd.

Larry Niemann, Niemann & Niemann, Austin, Tex., for the Texas Optometric Ass'n, Inc.

Brian R. Davis, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for intervenor, Texas Senior Citizens Ass'n of Port Arthur, Texas et al.

James B. Wesley, Houston, Tex., for intervenors, R. E. Hughes, O. D., et al.

Stephen L. Burkett, Burkett & Burkett, Inc., Corpus Christi, Tex., for Texas State Optical of Parkdale Plaza, Corpus Christi, Tex.

John L. Hill, Atty. Gen., State of Texas, Austin, Tex., for the State of Texas.

Before GOLDBERG, Circuit Judge, and FISHER and STEGER, District Judges.

## MEMORANDUM OPINION

By this civil action, filed pursuant to, *inter alia*, 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2281, *et. seq.*, Plaintiffs seek to enjoin on constitutional grounds enforcement of provisions of the Texas Optometry Act, Tex.Rev.Civ.Stat.Ann. art. 4552–1.01, *et. seq.*, by the Texas Optometry Board ("Board"). More specifically, Plaintiffs assert the following are violative of their constitutional rights under the first and fourteenth amendments: (1) the prohibition against price advertising, Vernon's Ann.Civ. Stat. art. 4552–5.09(a); (2) the mandatory colloquy between the optometrist and his patient regarding referral to an optician, Vernon's Ann.Civ.Stat. art. 4552–5.15(e); (3) the composition of the Board, Vernon's Ann.Civ.Stat. art. 4552–2.02; and (4) the forbiddance of practice under a trade name, Vernon's Ann.Civ.Stat. art. 4552–5.13(d).

█ Vernon's Ann.Civ.Stat. art. 4552–5.-09(a) provides in pertinent part that "[n]o optometrist shall publish or display . . any statement or advertisement of any price offered or charged by him for any ophthalmic services or materials . . ." The recent decision of the Supreme Court in *Bates v. State Bar of Arizona,* —— U.S. ——, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), makes it clear, however, that any blanket suppression of truthful price advertising is a violation of the right of commercial free speech. The Court therefore holds that art. 4552–5.09(a) is violative of the First Amendment.

█ The Texas Optometry Act further provides that "[n]o optometrist shall practice . . . optometry under, or use in connection with his practice of optometry, any . . . trade name . . . other than the name under which he is licensed to practice optometry in Texas . . . ." Vernon's Ann.Civ.Stat. art 4552–5.13(d). As noted above, Plaintiffs have asserted

that this article infringes on their constitutional rights. More particularly, they allege that it transgresses on their right to commercial free speech under the first amendment.[1] In deciding a first amendment question, the Court's function is to balance competing interests. That is, it must weigh the purported justifications for the restriction in question against its deprivation of first amendment rights and the subsequent harm, if any. See generally *Konigsberg v. State Bar*, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

■ In the instant case, Defendants assert that in the first amendment balancing test, any possible harm to the public is far outweighed by (1) the dangers to the doctor/patient relationship, (2) the deterioration of the quality of eye care, (3) the practical "concealment" of the optometrists' identity, and (4) the potential for deception and misrepresentation inherent in an assumed name practice. Based on the evidence and briefs before this Court, the Court finds Defendants' assertions unpersuasive. Although the Defendants rely extensively on supportive language contained in the decision of the Texas Supreme Court in *Texas State Board of Examiners in Optometry v. Carp*, 412 S.W.2d 307 (1967), this Court notes (1) the question before the Texas Court in *Carp* was not constitutional but whether the Texas board had exceeded its delegated power from the Legislature, (2) the names whose use were in question were those of licensed optometrists who sold Carp their locations, and (3) the *Carp* decision was rendered well before the recent Supreme Court pronouncements in *Va. Pharmacy Bd. v. Va. Consumer Council, supra,* and *Bates v. State Bar of Arizona, supra.*

In both the *Bates* and *Virginia Pharmacy* decision, in the process of striking down blanket suppression of truthful advertising, the Supreme Court addressed at great length the importance of commercial free speech in society. The Court declared in *Bates* that "the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Bates v. State Bar of Arizona, supra,* —— U.S. at ——, 97 S.Ct. at 2699. Further, that "commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." *Ibid.* In *Virginia Pharmacy, supra* 425 U.S. at 765, 96 S.Ct. at 1827, the Court stated

> So long as we preserve a predominantly free enterprise economy, the allocation of our resources . . . will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.

There are two closely related arguments in the instant case for the inclusion of trade names within the protected first amendment right of commercial free speech. The Court finds both persuasive. The first is that a "trade name" is encompassed within the meaning of advertising and thereby comes under the auspices of the first amendment protection recently granted to advertising by professional people. Therefore, it is argued that any blanket suppression of such commercial speech is unconstitutional. See *Bates v. State Bar of Arizona, supra.*

The argument for inclusion of trade names within the protective fold of advertising, is generally as follows: trade names,

---

1. Plaintiffs also assert infringement of their fourteenth amendment rights. This Court notes, however, that the Supreme Court has consistently upheld commercial regulations by states in the face of fourteenth amendment challenges where the state action was grounded in rational bases. See, *e. g. New Orleans v.*

*Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Since the Court feels, however, that the first amendment challenge is dispositive of this question, it does not address the fourteenth amendment arguments of the parties.

a common law right developed by virtue of being in business, grow as a result of the fact that people identify the name with a certain quality of service and goods, the end result being that eventually the name itself calls public attention to the product.

The second argument is that, even if a trade name is not an integral part of advertising per se, there is a first amendment right to the use of a trade name as part of the consuming public's right to valuable information. More specifically, that the Texas State Optical name [TSO] has come to communicate to the consuming public information as to certain standards of price and quality, and availability of particular routine services.

As stated above, the Court finds both arguments persuasive. Accordingly, this Court, applying the rationale of the advertising cases[2] to the trade name question, holds that blanket suppression of the use of trade names results in unwarranted restriction of the free flow of commercial information and therefore represents an unconstitutional violation of the first amendment.[3]

■ Vernon's Ann.Civ.Stat. art. 4552–5.-15(e) requires an optometrist, if he determines a patient needs lenses, to inform the patient (1) that the optometrist will prepare or have the lenses prepared according to the prescription, or (2) that the patient may have the prescription filled by any dispensing optician, not naming any particular optician, but should return for an optometrical examination of the lenses. The article further provides that "[i]f the patient chooses the first alternative, the optometrist may refer the patient to a particular dispensing optician . . . ."

Plaintiffs allege that this denies the optometrist the right under the First Amendment to furnish information as to where the patient can have his prescription filled, and that the patient is denied the right to obtain information from his optometrist as to where he can get his lenses made unless he accepts the statutorily required offer by the optometrist. Plaintiffs argue that the optometrist should be allowed to make a referral to a particular optician without the patient first requesting it. In addition, Plaintiffs allege a denial of equal protection because both opthamologists and osteopaths freely refer their patients to particular dispensing opticians. The Court does not find this article violative of Plaintiffs' constitutional rights.

Initially, the Court notes that first and fourteenth amendment rights are not absolute. As the Supreme Court observed in *Konigsberg v. State Bar of California*, 366 U.S. 36, 50–51, 81 S.Ct. 997, 1007, 6 L.Ed.2d 105 (1961),

> . . . general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, . . .

Evidence of a history of "kickbacks," economic tie-ins, and economic coercion peculiar to the optometric field provides a rational basis for a legitimate legislative purpose in enacting this article. See *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Further, by its wording, the clear purpose of this article appears to be to prevent the patient from being led to believe that the

---

2. See *Bates v. State Bar of Arizona*, —— U.S. ——, 97 S.Ct. 2691, 53, L.Ed.2d 810 (1977); *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

3. The Court would point out (1) that it rejects the contention that the TSO name misleads the public as to who is the responsible optometrist, *generally see Bates v. State Bar of Arizona,*

*supra,* —— U.S. at ——, 97 S.Ct. 2691, and (2) the fact that blanket suppression of a trade name is unconstitutional does not prohibit or invalidate regulations having to do with the posting of the optometrists' names present, or the requirement that those optometrists whose names are posted work so many hours per week at their place of business.

lens prescription must be taken to a particular optician, but instead requires that he be told that the optometrists can prepare or have the lenses prepared, OR that the patient may have the prescription filled by any optician he chooses. Therefore, the rationale of the recent Supreme Court cases involving advertising and first amendment rights is not applicable, since the effect of the article in question is not to restrict, but to encourage the free flow of commercial information to consumers. *See Bates v. State Bar of Arizona, supra,* and *Virginia Pharmacy Board v. Virginia Consumer Council, supra.*

■ Plaintiffs' equal protection allegations are also unpersuasive. As one three judge court observed in *Wall v. American Optometric Association, Inc.* D.C., 379 F.Supp. 175, 191 (1974), aff'd 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), in rejecting an equal protection argument against distinguishing between ophthalmologists and optometrists,

The equal protection clause of the Fourteenth Amendment does not require the state to treat different groups in the same manner. Only unreasonable discriminations are forbidden. *Williamson v. Lee Optical* [348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)].

■ Finally, the Court turns its attention to Vernon's Ann.Civ.Stat. art 4552–2.02, which provides in pertinent part that "[a]t all times there shall be a minimum of two-thirds of the [Texas Optometry] board who are members of a state optometric association which is recognized by and affiliated with the American Optometric Association." Plaintiffs assert that the resulting "4–2" Board composition is a violation of their rights to equal protection and due process.[4] More specifically, Plaintiffs allege there is no rational basis for the differentiation between Texas Optometric Association [TOA] and non-TOA optometrists

which would justify the distinction made between them for Board membership. Therefore, Plaintiffs assert non-TOA members, though equally qualified, are denied equal access to the governing Board, and are thereby deprived of an equal opportunity to exercise political influence. Plaintiffs also contend that the board composition requirements are unconstitutional because they create an irrebuttable presumption that TOA members are two-thirds more likely to be qualified than non-TOA members. In addition, Plaintiffs allege that the composition of the board deprives them of procedural due process, since eventually non-TOA members could be brought or charged before a biased (in favor of TOA members) Board.

On the other hand, Defendants assert that the allegedly unique problems the optometry profession has had in the areas of quality of care, "kickbacks" and tie-ins, and economic control over many members of the profession, provide a rational basis for state regulation. More particularly, Defendants allege the following rational bases for the requisite board composition:

(1) TOA members are more likely to be economically independent than non-TOA members;

(2) TOA members have a greater likelihood of emphasizing the highest quality of eye care, as compared to non-TOA members; and,

(3) TOA members are more prone to enforce the Texas Optometry Act than non-TOA members.

In addressing Plaintiffs' equal protection arguments, the Court must bear in mind the deference which the judiciary gives to the legislative branch in the area of economic regulation. As the Supreme Court observed in a recent decision, *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976),

---

4. The intervening senior citizens also contend that the Board composition leads to statutory interpretations restricting advertising and other methods of communicating commercial information, thereby resulting in an abridgment of

their first amendment rights. Whatever merit the senior citizens' claim may have had, the Court feels the argument is mooted by the Court's adherence, elsewhere in this decision, to *Bates v. State Bar of Arizona, supra.*

When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See, *e. g. Lehnhausen v. Lake Shore Auto Parts Co.* [410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)]. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.

The Supreme Court has previously held that "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it . . . .", *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), and "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940).

The Court rejects Plaintiffs' attempt to analogize the instant case with *Mayor of the City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974), since (1) there the Court was dealing with an inherently suspect classification (racial imbalance was involved), and (2) the basis of Plaintiffs' argument is found in a possible implication contained in dicta in the Supreme Court opinion.

Nor does the Court feel, in the face of Defendants' asserted rational bases, that Plaintiffs have carried the heavy burden required of them to prevail on equal protection grounds against state regulation.

The Court is also unconvinced by Plaintiffs' substantive due process arguments. Plaintiffs' reliance on three Supreme Court cases, *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), *United States Dept. of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767

(1973), and *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), as a basis for their allegation as to the unconstitutionality of their alleged irrebuttable presumption is ill founded. As contrasted with this case, all three of the cited cases involved fundamental rights, to which the irrebuttable presumption analysis has been limited. In the instant case, the Court must follow the reasoning of those non-fundamental rights cases involving sovereign state regulation of economic matters. See, *e. g. New Orleans v. Dukes, supra; Williamson v. Lee Optical of Oklahoma, Inc., supra.* A further consideration in the Court's rejection of Plaintiffs' position is that this article does not conclusively deny any person a Board seat.

The Court also is unpersuaded by Plaintiffs' procedural due process arguments. As one Court has noted, "there is no federal constitutional requirement to the effect that legislators and rule makers must be free of bias or interest. . . . " *Wall v. American Optometric Association, Inc., supra.* *Wall* and *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1972) are both readily distinguishable from the instant case for several reasons: (1) those cases were brought *after* the optometry boards in question had brought charges against the optometrist plaintiffs, therefore they speak directly only to the due process issues which surround disciplinary adjudications; (2) in those cases the board had rule-making power, which they had exercised, while in the instant case the Texas Board has no rule-making power, but only power to enforce what the legislature has mandated; and (3) *all* members of those boards were members of the State Optometrical Association, while here one-third of the Board is composed of non-TOA members.

In deciding in the face of the instant challenge that Vernon's Ann.Civ.Stat. art. 4552–2.02 is not violative of the Constitution, the Court does not address the potential constitutional problems if, in the future, non-TOA members should be charged and brought for a hearing before the Board

434

as presently composed. The Court feels compelled to point out, however, that it is clear "that those with substantial pecuniary interest in legal proceedings should not adjudicate [such] disputes." *Gibson v. Berryhill, supra.* Further, the Court points out that " '[m]ost of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators.' K. Davis, Administrative Law Text § 12.04, p. 250 (1972), and cases cited." *Id.* In addition, the Court would note that a constitutionally fatal bias in the statutory composition of a tribunal is not necessarily remedied by an offer of that tribunal to abdicate its statutory function. See *Wall v. American Optometric Association, Inc., supra.*

We have examined carefully all of Plaintiffs' other allegations and find each of them to be without merit.

Any finding of fact heretofore made which constitutes a conclusion of law is hereby adopted as a conclusion of law and any conclusion of law which is a finding of fact is hereby adopted as a finding of fact.

Counsel are directed to prepare an order in accordance with this Opinion.