602 F.2d 1149
 CA 79-2876 MEDORA, Claire, Copen, Erna, Henrich, Dorothy,
and all others similarly situated,
v.
COLAUTTI, Aldo, Individually and in his capacity as
Secretary of the Department of Public Welfare, Martino,
Samuel R., Individually and in his capacity as Executive
Director of the Lancaster County Board of Assistance, Link,
Susan, Individually and in her capacity as Caseworker for
the Lancaster County Board of Assistance,
Aldo Colautti and Samuel R. Martino, Appellants.
 No. 78-2341.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1979.
Decided July 24, 1979.
 
 Linda M. Gunn, Harrisburg, Pa. (argued), for appellants.
 Susan Wood (argued), Gregory Paulson, Lancaster, Pa., for appellees.
 Before SEITZ, Chief Judge, and HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 1. The Pennsylvania Department of Public Welfare (DPW) seeks review of a district court order which enjoins the application of a DPW regulation[1] to appellees and others similarly situated. Because the challenged regulation establishes a classification which contravenes the equal protection clause, the district court order will be affirmed.
 
 I.
 
 2
 2. Pennsylvania provides general assistance welfare benefits to "all of its needy and distressed" citizens.[2] DPW administers the benefit program and is authorized to promulgate rules and regulations which are consistent with the program's goals.[3] The federal government administers a program of Supplemental Security Income benefits (SSI) which aids the blind, aged and disabled. The SSI need criteria are stricter in practice than are those which govern the Pennsylvania general assistance program.[4]
 
 
 3
 3. The challenged regulation, P.A.E.M. § 297.1(e),[5] provides that the blind, aged, or disabled must apply for federal SSI benefits prior to applying for state general assistance benefits. It further provides that if a person is found Not to be blind, aged, or disabled (and hence unqualified for SSI) that person may then apply for general assistance. However, if the person is found to be blind, aged, or disabled, yet ineligible for SSI for some other reason (such as income or resources over the maximum limits) that person is Barred from applying for general assistance, Even if the person Would still qualify as needy under the applicable general assistance criteria. Thus, P.A.E.M. § 297.1(e) bars all aged, blind, or disabled persons from receiving general assistance, including those who are in fact needy under the Pennsylvania welfare code yet ineligible for benefits under the federal program. "The incongruity arises that if (such persons) were less disadvantaged (i. e. not blind, not aged, not disabled) they would be eligible for (general assistance), but since they are more disadvantaged they are not (eligible for general assistance)". Medora v. Colautti, No. 78-1549, slip op. at 2 (E.D.Pa. Aug. 4, 1978).
 
 
 4
 4. All of the appellees were denied SSI benefits for reasons unrelated to their recognized disabilities[6] and were subsequently declared ineligible for general assistance because of that denial. The district court concluded, "It is undisputed that if plaintiffs were not disabled and therefore not required to apply for federal support, they would be eligible for the state assistance." Id.
 
 
 5
 5. The district court found that the regulation promulgated by DPW was arbitrary, capricious and an abuse of discretion and that it frustrated the purpose of Pennsylvania's welfare statute. The court concluded that in applying the regulation and denying appellees benefits which the legislature intended they receive, DPW had violated the due process rights of the appellees. While we will affirm the district court's order, we need not reach the due process issue, since we hold that the DPW regulation establishes a classification which contravenes the equal protection clause.[7]
 
 II.
 
 6
 6. Under traditional equal protection analysis, we ask whether the challenged classification[8] is rationally related to a legitimate governmental interest. United States Department of Agriculture v. Moreno,413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The articulated purpose of the statute is to provide "assistance to all of (the State's) needy and distressed." Pa.Stat.Ann. tit. 62, § 401 (Purdon 1968). The statute does not establish any eligibility criterion other than need; if anything it exhibits a special solicitude for the disabled. See note 3 Supra. The challenged DPW classification, however distinguishes between the non-disabled needy and the disabled needy, providing aid to the former and denying it to the latter. See note 4 Supra. A classification such as this one "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Reed v. Reed,404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), Quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). We hold that P.A.E.M. § 297.1(e) falls far short of this standard. It ignores the common denominator of need, and creates a classification that bears no relation to the legislatively declared purpose of the general assistance program. Indeed, by excluding some persons from general assistance despite their undisputed qualification as needy, the challenged regulation actually frustrates the object of Pennsylvania's welfare statute.
 
 
 7
 7. The classification would still withstand equal protection scrutiny if it rationally furthered some legitimate governmental interest other than that specifically stated in the Pennsylvania legislature's declaration of intent. United States Department of Agriculture v. Moreno, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Williams v. Wohlgemuth, 366 F.Supp. 541, 547 (W.D.Pa. 1973), Aff'd. 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974). This is a two-part test: the government interest must be legitimate And the challenged classification must be rationally related to the furtherance of that interest.
 
 
 8
 8. DPW advances three governmental interests to which it claims the challenged regulation is rationally related. First, the regulation avoids the administrative inconvenience of the state having to assess independently a disabled person's need where the federal government has already made a determination. Second, the regulation encourages parties who may be eligible for SSI benefits to apply for them, with the result that state funds are preserved. Third, the regulation establishes a two-tiered system, which leaves to the federal government the task of supporting blind, aged and disabled citizens and allows DPW to provide for the remaining needy. It is by no means obvious that the cumulative weight of these goals is sufficient to make out a legitimate government interest.[9] We need not decide the question, however, since even if the three governmental interests presented by DPW are legitimate the challenged regulation fails rationally to further those interests.
 
 
 9
 9. First, in regard to the claim of administrative convenience, since the state and federal governments administer programs with different eligibility criteria, it is irrational to allow a decision based on the stricter federal law to control a decision which is supposed to be based on the more generous state code. DPW must independently assess need because it has independently (and differently) defined need. By incorporating the SSI decisions as its own, DPW is in the wholly unreasonable position of declaring disabled persons to be not needy under the Pennsylvania need criteria, while declaring identically situated nondisabled persons to be needy under exactly the same need criteria.
 
 
 10
 10. The second governmental interest is in promoting the "exhaustion" of federal sources of aid. While it may be rational for the state to require potential beneficiaries of general assistance to first apply for federal aid, once a person has applied for federal benefits and they have been denied, the goal of promoting exhaustion of federal sources of aid has been achieved. The rule challenged here, that the blind, aged or disabled needy who have applied for federal funds and been refused Will still be denied state funds, is not even triggered until it is clear that no federal aid will be available to the applicant. The rule bears absolutely no relation to encouraging the exhaustion of federal funds. Of course, any rule that withholds aid from qualified applicants preserves state funds. But the state must do more than claim that denying aid to qualified persons saves money, for "the saving of welfare costs cannot justify an otherwise invidious classification." Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969).
 
 
 11
 11. We turn to the final justification for P.A.E.M. § 297.1(e), that it will further the establishment of a two-tiered federal-state welfare system. The standard we have applied in our equal protection analysis has been determined by reference to the nature of the right affected by the classification and the identity of the class burdened by the classification. In this case the right affected is not fundamental and the class burdened is not suspect.[10]
 
 
 12
 12. Nevertheless, while receipt of welfare benefits may not be a fundamental right, it is an important right. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). When a state undertakes to provide welfare benefits for the needy, some degree of imprecision and inequality in the allocation of benefits may be tolerated; such discrepancies are seen as the practical cost of large-scale economic and social welfare programs. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). But as discrepant treatment becomes purposeful, and if it involves denial of all aid rather than allocation of amounts of aid, the courts will more closely examine the rationality of the underlying classification.[11] Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Close examination of rationality protects the rights of both the state and the burdened class members, and is appropriate in this case.[12]
 
 
 13
 13. Pennsylvania has recognized the importance of welfare and has undertaken to provide for "all of its needy." Having assumed this obligation, the state must discharge it fairly. Pennsylvania also wishes to distinguish between federal and state aid programs. If the state acts to realize this goal, it must do so rationally. The requirement that general assistance applicants who may be eligible for SSI must first apply for SSI is a rational means of attaining the state's twin objectives. It assures that the needy will receive aid, and that the aid will be provided by the appropriate governmental source. The further requirement that those denied SSI will Still be denied general assistance does not rationally serve those objectives because it operates to deny aid to the admittedly needy yet adds nothing to the federal-state distinction that has not already been achieved by the exhaustion rule. We cannot say that this is a rational means to further a governmental interest,[13] especially when less brutal but equally effective means of achieving its goals are available to the state.[14]
 
 III.
 
 14
 14. We hold that P.A.E.M. § 297.1(e) discriminates among similarly situated persons and does not rationally further any legitimate governmental interests. Accordingly, the order of the district court enjoining the application of the regulation to appellee Henrich and all other similarly situated persons, will be affirmed.
 
 
 
 [1]
 Public Assistance Eligibility Manual (P.A.E.M.) § 297.1(e). See note 5 for text of regulation
 
 
 [2]
 Pa.Stat.Ann. tit. 62, §§ 401 Et seq. (Purdon 1968). It was "declared to be the legislative intent" of the Pennsylvania General Assembly in passing the Commonwealth's Public Welfare Code:
 (t)o promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance To all of its needy and distressed ; that assistance shall be administered promptly and humanely with due regard for the preservation of family life, and without discrimination on account of race, religion or political affiliation; and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society. Pa.Stat.Ann. tit. 62, § 401 (emphasis supplied).
 
 
 [3]
 Id. § 403(b) (Purdon Supp. 1978). Section 408(a) of the statute further provides:
 The department shall have the duty to take measures not inconsistent with the purposes of this article; And when other funds or facilities for such purposes are inadequate or unavailable to provide for special needs of individuals eligible for assistance; to relieve suffering and distress arising from handicaps and infirmities ; to promote their rehabilitation; to help them if possible to become self-dependent; and, to cooperate to the fullest extent with other public agencies empowered by law to provide vocational training, rehabilitative or similar services. (emphasis supplied).
 Id. § 408(a).
 
 
 [4]
 In addition to the requisite age, 42 U.S.C. § 1382c(a)(1)(A), blindness, Id. § 1382c(a)(2), or disability, Id. § 1382c(a)(3), eligibility for SSI benefits is based on need. In determining eligibility, an individual's income and resources must fall below the legislated maximums, Id. §§ 1382(a)-(b). The income and resource standards for SSI are uniform nationwide and are higher than the maximums for Pennsylvania general assistance. Since SSI counts more items as income or resources, however, in practice the SSI definition of need is narrower than the Pennsylvania general assistance definition
 
 
 [5]
 As set forth in Public Assistance Eligibility Manual, § 297.1(e) provides:
 SSI is, in effect, a category of financial assistance administered by the Social Security Administration. Any person who meets the eligibility criteria for SSI as well as for AFDC or SBP, may choose which one of the three types of financial aid he will receive.
 Any person who meets age, blindness, or disability criteria for SSI may not, however, elect to receive General Assistance. Ineligibility for General Assistance includes persons terminated or denied SSI benefits for any reason except failure to meet age, blindness, or disability criteria. If an applicant or recipient of General Assistance is potentially eligible for SSI, he must apply for and cooperate fully in the determination of his SSI eligibility or he becomes ineligible for General Assistance. (emphasis added)
 
 
 [6]
 The court summarized the stipulated facts:
 (P)laintiffs Henrich and Copen were living with men who were not their spouses. Under SSI regulations, such men are considered spouses and a portion of their incomes are deemed available for the use of the SSI applicants for purposes of determining need. Accordingly, the federal rule rendered plaintiffs ineligible for SSI benefits. . . . On this basis, DPW denied those plaintiffs (general assistance) benefits, even though income of nonspouse companions is ordinarily not attributable to (general assistance) applicants under the DPW scheme. It is undisputed that, had plaintiffs been able to apply directly for (general assistance) funds, they would have been eligible in all respects. P.A.E.M. §§ 151.44, 187.22, 183.64.
 Plaintiff Medora lived with her husband in their family home until his death. Until that time, she received SSI benefits. Upon her husband's death, Medora put the home which was encumbered by a mortgage almost equal to its entire value up for sale and moved to a less expensive residence. Thereupon, her SSI benefits were terminated because "a house that is not lived in counts towards the resource limit" and she therefore had "countable resources" greater than $1,500. Medora then applied for (general assistance) benefits, which she received for a short time until they were terminated on the basis of the regulation at issue in this case. Had plaintiff not at one time been eligible for SSI benefits because of her disability, she would have received (general assistance) benefits; under the DPW scheme, eligibility is not affected by an applicant's ownership of nonresidential real property so long as he or she is taking steps to convert it into cash and encumbers the property to secure repayment of assistance received until conversion is completed. P.A.E.M. §§ 177.23, 179.23.
 No. 78-1549, slip op. at 2-3 (E.D.Pa. Aug. 4, 1978).
 At oral argument, we were informed that after this appeal was filed Medora sold her home and was declared eligible for SSI. She is receiving SSI benefits presently. Copen was also declared eligible for SSI and is receiving benefits. Henrich, however, still receives benefits only because of the district court's permanent injunction against the application of P.A.E.M. § 297.1(e).
 
 
 [7]
 Prior to deciding the due process question, the district court rejected appellees' equal protection claim, concluding that the regulation at issue rationally served the legitimate state interests of exhausting federal funds and of establishing a two-tiered federal-state welfare system. We disagree with that conclusion
 
 
 [8]
 The class created by P.A.E.M. § 291.1(e) consists of persons who are blind, aged, or disabled, who have been denied SSI benefits for a reason unrelated to blindness, age, or disability, and who qualify as needy for the purposes of Pennsylvania general assistance but have been denied such assistance solely because they were also denied SSI
 
 
 [9]
 The district court found the second and third interests to be legitimate. Certainly, administrative convenience, alone, cannot justify denying benefits to a class of applicants who are otherwise qualified to receive them. See Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Morales v. Minter, 393 F.Supp. 88, 99 (D.Mass. 1975). Cf. U.S. Department of Agriculture v. Murry, 413 U.S. 508, 519, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (Marshall, J., concurring)
 As to the second interest, saving state funds, we must bear in mind the important interest that welfare benefits represent. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), which involved the total exclusion of persons from a "needs" program, the Court stated that "the saving of welfare costs cannot justify an otherwise invidious discrimination." Id. at 633, 89 S.Ct. at 1330. See Buffington v. Beal, 430 F.Supp. 1281, 1284 (W.D.Pa. 1977). While it may be true that saving state funds is a legitimate state interest, where welfare benefits are involved, it is incumbent upon the state to proceed in a manner which achieves that goal while fairly treating similarly situated persons.
 As to the third interest, the creation of a two-tiered, state-federal aid system, the district court was of the opinion that Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), permitted a state to provide for such a system even if a group of otherwise qualified needy individuals were to be permanently excluded from participation in the welfare program. The language in Dandridge which suggests this position is:
 In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis", it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."
 397 U.S. at 485, 90 S.Ct. at 1161.
 Dandridge was a case in which the allocation of funds amongst needy recipients was challenged. While the Court observed that the equal protection clause allows some measure of inequality to occur, Dandridge was a case in which all qualified beneficiaries received at least some benefits. Dandridge cannot be read broadly to settle the question of whether benefits may be totally denied to a class of persons who are similar in all relevant respects to a class of persons who have been granted benefits. See Buffington v. Beal, 430 F.Supp. 1281 (W.D.Pa. 1977); Morales v. Minter, 393 F.Supp. 88, 101 (D.Mass. 1975); Williams v. Wohlgemuth, 366 F.Supp. 541 (W.D.Pa. 1973), Aff'd., 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974).
 
 
 [10]
 Accordingly, we have not exercised "strict scrutiny", Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (interstate travel); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (voting); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (ancestry); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943) (ancestry), but rather have applied the "rational relation" test. See page 1152 Supra
 
 
 [11]
 We see evidence of such heightened scrutiny in two Supreme Court cases in which potential beneficiaries challenged statutory provisions which denied them aid under the Federal Food Stamp program. In both United States Department of Agriculture v. Moreno, 413 U.S. 528, 535-538, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) and United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), the Court emphasized the "rationality" of the relation of the challenged welfare classifications to the furtherance of a governmental interest. While the court recognized the state's right to draw lines imperfectly it still felt that it was necessary to examine whether the classifications actually advanced some state interest. In both cases, the relationship between the classification and the attainment of the governmental goal was held to be irrational and hence inadequate to save the challenged classification
 
 
 [12]
 The importance of receiving welfare is not the sole reason we feel that close scrutiny of rationality is justified in this case. While the class definition here is based in some sense on the non-suspect basis of wealth (San Antonio School District v. Rodriguez, 411 U.S. 1, 32-33, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); But see, id. at 117-124, (Marshall, J., dissenting)), it is also based on the appellees' status as blind, aged, or disabled (since it is specifically these traits which trigger exclusion from the aid program). When classifications involve sensitive but non-suspect classes, the courts may engage in a more substantial analysis of rationality. For example, when illegitimate children are the burdened class the Supreme Court has engaged in a heightened scrutiny of the classification. Lalli v. Lalli, 439 U.S. 259, 265, 99 S.Ct. 518, 523, 58 L.Ed.2d 503 (1978) ("Although . . . classifications based on illegitimacy are not subject to 'strict scrutiny', they nevertheless are invalid under the Fourteenth Amendment if they are not substantially related to permissible state interests"); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). The reason for according this class heightened protection has been that "imposing disabilities on the illegitimate child is contrary to the basic concept of our system that Legal burdens should bear some relationship to individual responsibility or wrongdoing." Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 1407, 31 L.Ed.2d 768 (1972) (emphasis added). Similar results have been reached in cases of non-suspect, but sensitive, gender classifications. See Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)
 The plight of appellees is similar to that of the parties in the illegitimacy and gender cases. The reasoning of those cases, that no group should be singled out and burdened because of a characteristic over which they have no control and which is not related to a legitimate goal of the regulation, is instructive in the instant case.
 
 
 [13]
 In this case, the "state" (DPW) is denying aid to persons who have been granted aid by the "state" (Pennsylvania legislature). There are really two conflicting "state" interests aiding the needy and denying aid to the aged, blind and disabled. That DPW is denying aid to those whom the legislature wishes to see benefited is yet further evidence of the irrationality of DPW's classification
 
 
 [14]
 There was some suggestion at oral argument that the aged, blind and disabled needy were being denied aid as a means of forcing the federal government to lower its SSI eligibility standards. If such were the case, DPW would essentially be in the position of "shooting hostages" in an attempt to bring about what it considered to be a politically desirable result. This issue was touched upon in United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). There, the challenged statutory provision operated to deny food stamp aid to members of "unrelated" households. Some language in the sketchy legislative history of the provision suggested that the intent of congress was to "prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program." Id. at 534, 93 S.Ct. at 2826. The Supreme Court concluded: "The challenged classification clearly cannot be sustained by reference to this legislative purpose. For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a Legitimate governmental interest." Id. (emphasis in original). Just as the intentional harming of a group is not a legitimate goal, so too the intentional harming of a group to further some other governmental interest is not a rational means to further that other interest