Paul E. SPRAGENS (Ref.: S3GCB, 463–92–2526), Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. 91–CV–0173–B.

United States District Court, D. Wyoming.

Dec. 18, 1992.

Paul E. Spragens, pro se.

Aleksander D. Radich, Asst. U.S. Atty., Cheyenne, WY, for defendant.

ORDER

BRIMMER, District Judge.

This matter comes before the Court on August 19, 1992. The Court, having considered the materials on file both in sup-

port of and in opposition to the motions, having considered the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

The facts of this case are not in dispute. Plaintiff Paul Spragens ("Spragens") is a quadriplegic, has no use of his arms, limited use of his legs, and is unable to walk. He suffers from a condition known as arthrogryposis, a congenital deformity.[1] Spragens filed this action pro se, seeking judicial review of the defendant's ("the Secretary") final decision that his period of disability ceased as of January 1986, because he was engaged in substantial gainful activity ("SGA") within the meaning of Title II of the Social Security Act ("the Act"), codified at 42 U.S.C. §§ 401–33 (1991).

In February 1976, Spragens was awarded disability and disability insurance benefits based on a finding of disability beginning in June 1974 due to arthrogryposis (Adm.Rec. 52). In September 1988, following a continuing disability review, the Social Security Administration ("SSA") made a finding that from January 1986 through December 1986, Spragens' average monthly net income from his work as a free-lance book indexer was $349.26. Because Spragens' net income exceeded $300 per month, the SSA determined that Spragens was engaged in substantial gainful activity and no longer qualified for disability benefits (Adm.Rec. 61–68)[2]. This determination was upheld upon reconsideration (Adm.Rec. 76–77), and, following a hearing (Adm.Rec. 15–47), in a decision by an Administrative Law Judge (ALJ) (Tr. 7–10).[3] The Appeals Council adopted the Administrative Law Judges's decision, making it the Secretary's final administrative decision (Adm.Rec. 3–4).

The Secretary has moved the Court to affirm his administrative decision. Spragens has raised an equal protection issue and has moved for summary judgment.

## STANDARD FOR REVIEW

### Substantial Evidence

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action ... in the district court of the United States for the judicial district in which the plaintiff resides....

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

The findings of the Secretary as to any fact, if supported by **substantial evidence,** shall be conclusive (emphasis added)....

42 U.S.C. § 405(g) (1991).

Substantial evidence is defined as 'sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.'

*Potter v. Secretary of Health & Human Services,* 905 F.2d 1346, 1348 (10th Cir. 1990) *quoting Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir.1988).

### Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

---

**1.** Arthrogryposis is a contracture of the joints. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 148 (25TH ED. 1974). Approximately one in three thousand people are inflicted by arthrogryposis at birth. The severity can vary greatly. Telephone Interview with Mary Anne Schmidt, Director of Avenues, National Support Group For Arthrogryposis Multiplex Congenita, Sonora, California (December 16, 1992).

**2.** Spragens' disability was determined to have ceased in January 1986, the first month of substantial gainful work after the completion of a trial work period (Adm.Rec. 76).

**3.** The ALJ also found that Spragens had been overpaid for disability insurance benefits by $19,930 from April 1986 through May 1989 (Adm.Rec. 9, 69–71).

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).... Under [Rule 56], the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511.

*Manders v. Okl. ex rel. Dept. of Mental Health,* 875 F.2d 263, 265 (10th Cir.1989).

## DISCUSSION

### *Review of Administrative Decision*

The Social Security Administration has a procedure for determining whether a claimant's disability continues or ends under the Act. 20 C.F.R. § 404.1594 (1991). The first step involves a determination of whether there has been medical improvement and if that improvement is related to a claimant's ability to work. *Id.* at § 404.-1594(a). If there has been no medical improvement,[4] benefits will continue unless an exception applies. *Id.* One of the exceptions requires a determination of whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1594(d)(5) (1991). If the claimant has engaged in SGA and any applicable trial work period has been completed, the disability will be deemed to have ended. *Id.* at § 404.-1594(f)(1).

 Mr. Spragens' impairment did not improve, so the first step in the evaluation process was a determination of whether Spragens was engaged in SGA. The record shows that Spragens' net income in 1986 from self employment was $6,043 (Adm.Rec. 86, 110). After deducting $1,853 of allowable impairment related work expenses (Adm.Rec. 115), his income was $4,191, or an average of about $349 per month. This exceeded the $300 amount allowable under the regulations and created a presumption that Spragens was engaged in SGA and was no longer eligible to receive benefits. 20 C.F.R. § 404.-1574(b)(2)(vi) (1991). Thus, the SSA determined, after a nine month trial work period, which ended in November 1978, and a fifteen month extended period of eligibility, which ended in February of 1982, that Spragens was engaged in SGA (Adm.Rec. 8–9).

Spragens does not disagree with the SSA records regarding his earnings or employment related work expenses, which were the basis for the administrative finding (Adm.Rec. 8–9). Because of Spragens' SGA, the Administrative Law Judge determined that Spragens' disability correctly ceased in January 1986, and that Spragens was overpaid disability insurance benefits by $19,930. *Id.*

This Court finds that there is substantial evidence in the record to support the administrative finding that Spragens was engaged in substantial gainful activity. Because Spragens was engaged in SGA, he "could not be found disabled, regardless of the severity of his impairments." *Fowler*

---

4. There is no evidence of medical improvement in this case.

**1540**

*v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989); *see also* 20 C.F.R. § 404.1520(b) (1991). For these reasons, the government's motion to affirm the administrative decision is granted.

### Equal Protection Challenge

Spragens argues that 42 U.S.C. § 423(d)(4) (1991) violates the equal protection component of the Due Process Clause of the Fifth Amendment.[5] Section 423(d)(4) states that: "No individual who is blind shall be regarded as having demonstrated an ability to engage in substantial gainful activity on the basis of earnings that do not exceed the exempt amount under section 403(f)(8) of this title which is applicable to individuals described in subparagraph (D) thereof." Under this section, a more lenient monthly earnings test is applied to a person disabled by reason of blindness, as opposed to some other cause, in determining whether that person is engaged in SGA. 42 U.S.C. § 423(d)(4); *see also* 20 C.F.R. 404.430, 404.1584(d) (1991).

In 1986, a person disabled by blindness could earn up to $650 per month without being engaged in SGA. 20 C.F.R. 404.-430(d)(ix) (1991). By contrast, a person disabled by something other than blindness could only earn up to $300 per month without being engaged in SGA. 20 C.F.R. § 404.1574(b)(2)(vi) (1991). Spragens had net earnings of $349.26 per month in 1986. He was determined to be engaged in SGA, and lost all disability benefits. Had Spragens been disabled by reason of blindness, rather than by arthrogryposis, he would not have been engaged in SGA under the guidelines, and would not have lost his disability benefits.

This regulatory scheme creates a classification. People severely disabled by arthrogryposis, having net earnings between $300 and $650 per month, in 1986, were denied disability benefits. Whereas, people disabled by blindness, who earned between $300 and $650 per month, in 1986, received disability benefits.

In the area of social welfare, traditional equal protection analysis requires the challenged classification to be rationally related to some legitimate governmental interest. *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981). "This is a two part test: the government interest must be legitimate and the challenged classification must be rationally related to the furtherance of that interest." *Medora v. Colautti,* 602 F.2d 1149, 1153 (3d Cir.1979).

In some instances, courts have departed from their "extreme deference to the legislature and engaged in a meaningful rational basis review." *The Supreme Court, 1987 Term Leading Cases,* 102 Har. L.Rev. 201 (1988). In *Cleburne,* historical prejudice against the mentally retarded caused the Supreme Court to more carefully scrutinize a zoning board's actions. 473 U.S. at 450, 105 S.Ct. at 3259. The Third Circuit engaged in a more rigorous rational basis review in *Medora v. Colautti,* 602 F.2d 1149. *See also Ranschburg v. Toan,* 709 F.2d 1207 (8th Cir.1983).

In *Medora,* the Third Circuit said "[t]he importance of receiving welfare is not the sole reason we feel that close scrutiny of rationality is justified in this case."[6] 602 F.2d at 1154 n. 12. "While the class definition here is based in some sense on the nonsuspect basis of wealth ..., it is also based on the appellees' status as blind, aged, or *disabled....*" *Id.* (emphasis added). "When classifications involve sensitive but nonsuspect classes, the courts may engage in a more substantial analysis of rationality." *Id.*

**5.** "It is well settled that the Fifth Amendment's Due Process Clause encompasses equal protection principles." *Mathews v. De Castro,* 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 432 n. 1, 50 L.Ed.2d 389 (1976).

**6.** Receipt of welfare benefits is an important right. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The disabled are a sensitive class, and are often discriminated against.[7] *See, e.g., O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Alexander v. Choate*, 469 U.S. 287, 295–98, 105 S.Ct. 712, 717–19, 83 L.Ed.2d 661 (1985), *Cleburne*, 473 U.S. at 461, 105 S.Ct. at 3265; Note, *Employment Discrimination Against the Handicapped and Section 504 of the Rehabilitation Act: An Essay on Legal Evasiveness*, 97 HARV.L.REV. 997 (1984). The Court finds that the severity of Spragens' disability, the undeniable discrimination against him,[8] and the fact that he lost all benefits[9] warrants a more exacting rational basis review.

A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Medora*, 602 F.2d at 1152, *quoting Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). The issue is whether there is a relevant characteristic of the blind as a class that justifies the disparate treatment. *See Cleburne*, 473 U.S. at 453, 105 S.Ct. at 3261; *Zobel v. Williams*, 457 U.S. 55, 70, 102 S.Ct. 2309, 2318, 72 L.Ed.2d 672 (1982).

The United States asserts that Congress' objective in passing 42 U.S.C. § 423(d)(4) was to provide greater assistance to the blind. The legislative history supports this contention. In arguing for passage of the Senate bill,[10] Senator Bayh stated that the "earning limitation" to qualify for disability benefits should be removed for blind people because "[t]he blind, as a group, suffer largely artificial impediments when they seek to enter and compete in the labor market. The economic penalties exacted by discrimination are evident in a dramatic 70 percent rate of unemployment and underemployment." 123 Cong.Rec. 37,139–40 (1977).

However, the Eighth Circuit has stated that "[a] decision to favor one group of recipients over another *by itself* is not a legitimate interest." *Ranschburg*, 709 F.2d at 1211 (emphasis added). In addition, the Third Circuit noted:

7. Only recently have legislatures and courts begun to realize that, intentionally or not, the disabled have been systematically excluded from and denied access to governmental privileges and benefits that **appear** to have been made available to all on equal terms.

\* \* \* \* \* \*

The physical and mental impairments of the disabled have been the basis of their persistent social stigmatization and isolation, including the uninhibited exercise, in the not too distant past, of institutionalization as a mechanism for segregating those handicapped persons whose disabilities even their families did not understand or accept. Even when not physically isolated from society, disabled persons may experience painful ostracism in a culture that puts great weight on conformity to norms of appearance or performance that not all can meet. But whatever the source of the discrimination against the disabled— whether from overtly invidious discrimination and stereotyping, or from an insidious blindness to the ramifications of rules that operate inexorably to exclude the disabled— the rationale for semisuspect treatment of the handicapped is compelling. A history of continuous and pervasive deprivations and exclusions, the product of both legislative blindness and bias towards the disabled, justifies the exercise of heightened judicial scrutiny. LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW, § 16–31, at 1594–97 (2d ed. 1988).

8. In Spragens' social security file, one of the SSA employees referred to Spragens as "hideously deformed."

9. If the discrepant treatment "involves denial of all aid, the courts will more closely examine the rationality of the underlying classification." *Medora*, 602 F.2d at 1154; *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972).

10. In 1977, the United States Senate passed an amendment to the Social Security Act that, among other things, would have permitted the Secretary to consider a legally blind worker disabled "regardless of earnings and capacity to work." Staffs of the House Subcommittee on Social Security of the Comm. on Ways and Means and Senate Comm. on Finance, 95th Cong., 1st Sess., Social Security Financing Amendments of 1977, H.R. 9346, *Comparison of House and Senate Bills With Existing Law* 38–39 (Joint Comm. Print, Nov. 28, 1977). The House bill did not have a similar provision benefitting the blind. *Id.* The conference committee bill, which became law, provided that the amount of earnings used to determine SGA for the blind, would be "increased to the same exempt amounts as for persons 65 and over under the liberalized retirement test...." 123 Cong.Rec. 39,032 (1977).

[I]t is always possible to hypothesize that the purpose underlying a classification is the goal of treating one class differently from another. A statute's classifications will invariably be rationally related to a purpose so defined, since the "purpose" is, in effect, a restatement of the classification. To engage in such hypothesizing, however, would render the rational basis standard no standard at all.

*Delaware River Basin Commission v. Bucks County Water & Sewer Authority,* 641 F.2d 1087, 1099–1100 (3d Cir.1981). Therefore, the Court finds that providing greater assistance to the blind *by itself* is not a legitimate objective.

The legislative history supporting 42 U.S.C. § 423(d)(4) suggests that another Congressional objective may be to give greater federal assistance to the most needy. Senate and House conference committee members felt that "blind persons experience *greater* ongoing financial problems in seeking permanent employment than other disabled individuals...." 123 Cong.Rec. 39032 (1977) (emphasis added).

While giving greater federal assistance to the most needy is a legitimate objective, the Court holds that 42 U.S.C. § 423(d)(4) is not rationally related to that objective. *See Ranschburg,* 709 F.2d at 1210. More specifically, the Court does not believe that a blind person suffers **greater** ongoing financial problems in seeking permanent employment than a person such a Spragens, who is severely disabled by arthrogryposis.

The Court reasons that arthrogryposis cannot be rationally distinguished from blindness in this context. Like blindness, arthrogryposis is a permanent and irreversible condition. A blind person and a quadriplegic with arthrogryposis both must overcome obstacles to secure and hold employment. In overcoming the loss of sight, a blind person can use braille and computers as tools, and a seeing eye dog to assist with mobility. Spragens has no use of his

arms, and limited use of his legs, and cannot walk. Nevertheless, he is able to use a computer to assist him in his work as a free-lance book indexer.[11] In addition, he has a motorized wheelchair which partially compensates for his inability to walk.

Although Spragens is intellectually capable, his employment is severely limited by his physical disabilities. Arthrogryposis has emaciated his body, causing one SSA employee to refer to him as "hideously deformed." In this respect, the Court believes that discrimination against Spragens would be *greater* than that against a blind person.[12] For these reasons, the Court concludes a blind person and a person like Spragens are similarly situated, and that there are no relevant characteristics of a blind person that can justify such disparate treatment.

The Court finds that 42 U.S.C. § 423(d)(4) "ignores the common denominator of need, and creates a classification that bears no [rational] relation" to the legislative purpose of giving greater assistance to the most needy. *Medora,* 602 F.2d at 1152. Under the terms of 42 U.S.C. § 423(d)(4), government benefits are not made available to the blind and other severely disabled persons on equal terms.

Although the United States has not done so, it may argue that another reason for the classification at issue is to save welfare costs. However, this is not a legitimate objective. "The saving of welfare costs cannot justify an otherwise invidious classification." *Shapiro v. Thompson,* 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969).

The Court concludes that many of the statements about the blind in the legislative history for 42 U.S.C. § 423(d)(4) apply equally to a person severely disabled by arthrogryposis. Senator Bayh stated that "the strongest argument for this proposal before the Senate is the need to remove disincentives to gainful activity, and to en-

---

**11.** Spragens is able to write and type with his feet.

**12.** The Court believes that Spragens "may experience painful ostracism in a culture that puts

great weight on conformity to norms of appearance or performance that not all can meet." Laurence H. Tribe, American Constitutional Law, § 16–31, at 1594–97 (2d ed. 1988).

courage every person to seek work, to contribute, and to become independent." 123 Cong.Rec. 37,140 (1977). Like the blind, people severely disabled by arthrogryposis "are being sidelined from productive participation in our economy through an unintentional bias against work, which has been built into the disability insurance system." *Id.* "It just does not make sense to hold back people who want to overcome their handicap and make their own way in the world." *Id.* at 37,141.

For the above-listed reasons, the Court finds that Congress' classification in 42 U.S.C. § 423(d)(4), which singles out the blind for preferential treatment, is arbitrary and discriminatory. As applied to Spragens, it does not have "a fair and substantial relationship to the object of the legislation...." *Medora*, 602 F.2d at 1152, *quoting Reed*, 404 U.S. at 76, 92 S.Ct. at 254. A classification is not rationally based simply because Congress chose to provide benefits to some but not to others. *See Ranschburg*, 709 F.2d at 1211.

THEREFORE it is

ORDERED that the United States' motion to affirm the administrative decision be, and the same is hereby GRANTED.

ORDERED that 42 U.S.C. § 423(d)(4), as applied to Spragens, violates the equal protection component of the Fifth Amendment to the United States Constitution. Therefore, plaintiff's motion for summary judgment is hereby GRANTED.

ORDERED that the Social Security Administration reinstate Spragens' eligibility to receive disability benefits.

ORDERED that the Social Security Administration pay Spragens all disability benefits for the period that he was deemed to be ineligible because he was engaged in substantial gainful activity.

ORDERED that Spragens does not owe the Social Security Administration $19,930, an amount that was allegedly overpaid to Spragens for disability benefits.